[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11349
_____

D.C. Docket No. 4:12-cv-02157-KOB

DON L. WITT,

Plaintiff-Appellant,

versus

METROPOLITAN LIFE INSURANCE CO.,
SHELL OIL LONG TERM DISABILITY TRUST PLAN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 25, 2014)

Before HULL, MARCUS and DUBINA, Circuit Judges.

HULL, Circuit Judge:

In this case, we must determine whether plaintiff Don Witt's lawsuit seeking to recover disability benefits allegedly due from May 1997 to the present is barred by the applicable statute of limitations and, if so, whether the defendants waived that statute-of-limitations defense. After careful review of the record and the briefs, and with the benefit of oral argument, we affirm the district court's grant of summary judgment in favor of the defendants.

## I. BACKGROUND

The facts of this case are largely undisputed. From May 18, 1972, until December 29, 1994, Witt worked as a senior operations specialist with Shell Oil Company. In connection with his employment, Witt gained access to short-term and long-term disability insurance through the Shell Oil Long Term Disability Plan (the "Plan"),[1] whose long-term disability claims are administered by Metropolitan Life ("MetLife"). The Plan is subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"). This lawsuit stems from a claim for disability benefits originally filed in 1997.

### A.    Approval of Witt's Claim for Benefits in 1995-97

On January 3, 1997, Witt filed a claim for disability benefits based on anterior cervical fusion and a herniated lumbar disc. On January 17, 1997, Witt

---

[1]Witt named as defendant the "Shell Oil Long Term Disability Trust Plan." However, the defendants indicate that the correct name for the entity is the "Shell Oil Long Term Disability Plan."

2

updated his claim, reporting that he was also suffering from secondary asbestosis, coronary artery disease, and hypertension. Although his claim was not made until 1997, Witt sought benefits from December 29, 1995. According to MetLife's files, Witt also complained of neck, shoulder, and back pain; dizziness; and severe headaches.

Although Witt's 1997 claim for 1995-96 benefits was untimely under the Plan's provisions, MetLife approved the claim and granted him retroactive benefits, effective December 29, 1995. On March 7, 1997, MetLife sent Witt a Notice of Approval, stating that it had awarded him a monthly benefit of $3,125.00, which would be reduced by any worker's compensation or social security benefits Witt received. After accounting for the deductions, MetLife estimated it would make monthly payments of $514.41 to Witt for the remainder of his life. The Notice of Approval included the following provision immediately above MetLife's estimated contributions: "Providing reductions remain as listed above, and you remain totally disabled as defined in your group plan, your benefit schedule will be as follows . . . ."

Witt's Plan advised that the participant may be requested to submit periodic proof of continuing disability and those benefits will be paid only "if proper proof of continued disability is provided." Additionally, the Plan's Summary Plan

3

Description specified that it "does not provide benefits for any disability . . . from the date you fail to furnish due proof of continued disability."

MetLife paid benefits to Witt through April 30, 1997.

## B.     May 1997 Termination of Benefits

On May 22, 1997, MetLife terminated Witt's claim effective May 1, 1997, for failure to provide adequate supporting medical records.  Pursuant to his disability policy, Witt had the "right to request a review of any denied claim by writing . . . within 60 days after receiving the denial notice."  MetLife's internal records indicate that it sent Witt a letter that day, informing him that his claim was terminated for failure to support.

In this 2012 litigation, however, MetLife has been unable to produce a copy of the 1997 letter.  Witt denies ever receiving such a letter.  In any event, MetLife did not pay benefits to Witt in May 1997, or in any month thereafter.

## C.     1997-2009

Although Witt stopped receiving benefits in 1997, Witt did not challenge the termination of his benefits.  Notably, Witt did not make any inquiries of MetLife for the 12 years that passed between benefits termination on May 22, 1997, and May 29, 2009.

## D.    Events in 2009-2012

On May 29, 2009, Witt's attorney, Joshua Sullivan, contacted MetLife by telephone, requesting a status update on Witt's claim.  Sullivan indicated that Witt had received an approval letter but no payments.

On June 3, 2009, MetLife informed Sullivan that it would review Witt's file once Sullivan sent MetLife a copy of the Notice of Approval and a letter of representation.  Sullivan sent MetLife the Notice of Approval on December 23, 2009, and the letter of representation on December 31, 2009.

Once it received both documents, MetLife reviewed Witt's previously-archived file from 1997.

On January 26, 2010, MetLife sent a letter to Sullivan, stating that Witt's claim "was paid for the period December 29, 1997 [sic] through April 30, 1997 and Terminated effective May 1, 1997 for failure to provide proof of continued Disability."  MetLife characterized Witt's request for benefits as an attempted revival of his old claim, rather than a new claim for benefits.  Specifically, MetLife stated that if attorney Sullivan wished to have his "clients [sic] claim . . . reviewed for Benefits beyond May 1, 1997[,] we require supporting medical documentation."  MetLife's 2010 letter also told Sullivan to "submit evidence of any abnormal clinical exam findings from the health care providers who treated your client from May 1, 1997 through the date that you are claiming Disability

benefits for your client.  The information provided should include office visit notes[,] objective test results and any other relevant medical information which was not previously submitted for review."  MetLife's letter reflects that it understood Witt was seeking back benefits from May 1997 forward.

Over the next 12 months (January 2010–February 2011), MetLife received no letters, phone calls, or other correspondence from either Witt or Sullivan.

On February 17, 2011—more than a year after MetLife requested medical documentation—attorney Sullivan sent MetLife a letter with attachments from eight sources, for a total of 10 documents in support of Witt's claim.  The attachments included a receipt for Witt's claim of his Social Security benefits, along with notes from seven doctors: three written in 1995; one written in 1998; one written in 2002; one written in 2005; one written in 2006; and two written in 2010.  In 2011, Witt again was seeking back benefits from May 1, 1997 forward.

MetLife subsequently reviewed Witt's claim with the supporting documentation.  During the review, MetLife's legal department noted that submitting medical documentation "14 yrs [sic] later is outside of ERISA timeframe."  However, MetLife's legal department also noted that it had reviewed the file in January 2010 and its "decision was to allow submission of medical since 1997 to present for review, since claim had been terminated for FTS [failure to support]."

6

On March 21, 2011, MetLife notified Witt, via a letter to Sullivan, that Witt's claim for benefits, which "was terminated on May 1, 1997 due to not submitting medical documentation to support a continued disability," would remain terminated.  MetLife's letter included a summary of the doctors' notes submitted in support of Witt's claim, but concluded that "the medical documentation in support of his claim did not provide any functional impairment that would prevent him from performing the duties of his job or any job." Additionally, MetLife stated that the "medical documentation noted Mr. Witt has hypertension, low back pain, cardiac problems, asbestos in the lungs and that would prevent him from going to jury duty and attend legal matters, and memory loss, but no actual medical records to support the severity of these multiple diagnoses were provided for review."

MetLife's March 21, 2011 letter indicated that Witt could appeal the decision by written request within 180 days of receipt of the notification letter.[2] On September 16, 2011, attorney Sullivan notified MetLife that Witt was appealing the continued termination of his claim.  MetLife granted Witt two extensions to file supporting documentation, and Sullivan submitted a letter and additional documentation to support Witt's claim on November 15, 2011.

---

[2]It is unclear from the record why MetLife allowed Witt to appeal its decision at any time within 180 days, rather than imposing the 60-day deadline specified in the Summary Plan Description.

In its letter to attorney Sullivan dated May 4, 2012, MetLife upheld its decision to leave Witt's claim terminated, effective May 1, 1997. In its 2012 letter to attorney Sullivan, MetLife stated that, although "Mr. Witt has some restrictions and limitations, he has not demonstrated that beyond April 30, 1997 and thereafter, [he] was unable to perform his own job or any job due to illness or injury." In the 2012 letter, MetLife again reviewed the relevant medical information, but found that "there is insufficient information to support the need for restrictions or limitations continuously beyond April 30, 1997." For the third time, MetLife noted Witt's claim for benefits from 1997 forward remained "terminated."

MetLife's 2012 letter concluded its review of Witt's claim by stating as follows: "You have exhausted your client's administrative remedies under the plan, and no further appeal will be considered." The denial letter then stated that Witt had "the right to bring civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974." MetLife's letter did not assert a time-bar or statute-of-limitations defense.

## E.    District Court Proceedings

On June 13, 2012, Witt filed a complaint against the defendants in district court, seeking, among other things, past, present, and future benefits due; attorney fees; and costs. The complaint asserted that MetLife terminated the 1997 claim for benefits "[b]y a letter dated March 21, 2011," but that the defendants had been in

8

violation of the terms of the policy "[s]ince 1998." Despite the references to 2011 and 1998, Witt's complaint sought recovery of "monthly benefits from 1997 until present."

The defendants answered the complaint and asserted a number of affirmative defenses, including that Witt's "claims are subject to the applicable statutes of limitations and deadlines contained in the plan documents and under applicable law." The defendants then moved for judgment in their favor as a matter of law, arguing, among other things, that Witt's claim was untimely under the applicable statute of limitations.

Witt subsequently filed his own motion for judgment on the record.[3] Witt contended that the defendants waived any timeliness defense by failing to "assert or allude to the timeliness issue" both in the 2011 letter informing Witt that his claim would remain terminated and in the 2012 letter upholding that decision on appeal. Following his own motion, Witt filed a brief in response to the defendants' motion, further arguing that his claim was timely under the premise that MetLife's May 4, 2012 letter constituted the "final determination" for purposes of starting the statutory period.

In a February 25, 2014 order, the district court granted the defendants' motion for judgment as a matter of law and denied Witt's motion. In a

---

[3]Witt filed a "Brief in Support of Judgment on the Record," which the district court construed as a motion for judgment on the record.

memorandum opinion accompanying the order, the district court concluded that Witt's complaint was time-barred pursuant to the applicable six-year statute of limitations. The district court determined that the statute of limitations began to run by June 1997 at the latest—when Witt should have known he stopped receiving benefits—and that his complaint was therefore untimely. The district court held that the defendants had not waived any statute-of-limitations defense merely because MetLife did not raise the timeliness issue during its 2009-2012 administrative review of Witt's file. Finally, the district court rejected Witt's argument that the statute of limitations did not begin to run until MetLife made its final determination on May 4, 2012. The district court reasoned that, if "the court were to find that any 'courtesy' review—regardless whether it is termed as such—starts the running of a whole new statute of limitations period, claim administrators would never allow for any untimely review and it would be disabled individuals who would suffer as a result."

Witt timely appealed.

## II. STANDARD OF REVIEW

The application of a statute of limitations in an ERISA case is a question of law that we review de novo. See Harrison v. Digital Health Plan, 183 F.3d 1235, 1238 (11th Cir. 1999) (stating, in the context of an action brought under ERISA, that the "district court's interpretation and application of a statute of limitations is a

question of law that this Court may review de novo"); accord United States v. Gilbert, 136 F.3d 1451, 1453 (11th Cir. 1998) ("We review the district court's interpretation and application of the statute of limitations de novo."). With regard to waiver, we review de novo a district court's legal conclusions, but we review for clear error any factual findings underlying those legal conclusions. See Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1316 n.18 (11th Cir. 2002).

## III. STATUTE OF LIMITATIONS

### A.   Six-Year Limitations Period

Because Congress did not specify a limitations period for a claim-of-benefits ERISA action, district courts must apply the forum state's statute of limitations for the most closely analogous action. Blue Cross & Blue Shield of Ala. v. Sanders, 138 F.3d 1347, 1356 (11th Cir. 1998). Because the parties do not dispute that the district court properly borrowed Alabama's six-year statute of limitations for this case, we will apply that statute.

"When a federal court borrows a limitations period from state law for use in implementing a federal law that does not possess a self-contained statute of limitations, the court is nonetheless applying federal law." Harrison, 183 F.3d at 1238. Accordingly, although state law specifies the duration of the limitations period, federal law determines the date on which that period begins. Accord Bowling v. Founders Title Co., 773 F.2d 1175, 1178 (11th Cir. 1985) (stating, in

11

the context of RICO, that "although state law specifies the duration of the limitations period, federal law determines the date on which that period begins").

## B.    The Limitations Period Begins to Run When the Cause of Action Accrues

Here, the parties' main dispute is over when the six-year limitations period began to run on Witt's ERISA claim.  Witt contends the limitations period did not begin to run until May 4, 2012, when MetLife issued a final, conclusive, and written decision denying him benefits.  Witt claims he never received MetLife's 1997 letter terminating his benefits and, therefore, the statute of limitations did not begin running back in 1997.  In response, MetLife contends that the limitations period began to run when MetLife stopped making monthly payments to Witt because, at that point, Witt knew or should have known that his claim had been denied.

In the context of claims for health benefits under ERISA, our prior decisions suggest that the statute of limitations generally begins to run when a cause of action accrues and the plaintiff can file suit.  See, e.g., Harrison, 183 F.3d at 1241 n.8 ("It is undisputed that if a one-year statute of limitations is applied, Harrison's claims are time barred because it is clear from the face of her complaint that she did not file her claims within a year from the time her cause of action accrued."); see also Heimeshoff v. Hartford Life & Accident Ins. Co., 571 U.S. ___, ___, 134 S. Ct. 604, 610 (2013) ("As a general matter, a statute of limitations begins to run

when the cause of action accrues—that is, when the plaintiff can file suit and obtain relief." (quotations omitted)).  The more difficult issue here is: When did Witt's ERISA cause of action accrue?

An ERISA cause of action generally "does not accrue until an application [for benefits] is denied."  Paris v. Profit Sharing Plan for Emps. of Howard B. Wolf, Inc., 637 F.2d 357, 361 (5th Cir. 1981)[4]; see also Heimeshoff, 571 U.S. at ___, 134 S. Ct. at 610 ("A participant's cause of action under ERISA . . . does not accrue until the plan issues a final denial.").

But what happens when the defendant says it issued a formal denial letter and the plaintiff says he never received the letter, but it is undisputed the defendant terminated benefits and did not pay the plaintiff any benefits for 12 years?  This Court has not addressed this situation before.  This Court has suggested, however, that an ERISA cause of action may accrue when a claimant receives an underpayment on his benefits claim.  See In re Managed Care, 756 F.3d 1222, 1238 (11th Cir. 2014) (stating that claimants' "ERISA claims based on the denial

---

[4]This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

In Paris, the plaintiffs, former employees, sought benefits under a retirement plan that was adopted on February 21, 1974, and made retroactive to June 1, 1973.  Paris, 637 F.2d at 358-59.  In 1975, several plaintiffs sought information regarding their benefits, but the defendants interpreted the plan's terms, as of the 1974 change, to exclude the plaintiffs.  Id. at 359-60.  The Fifth Circuit considered whether the plaintiffs' cause of action accrued before or after January 1, 1975, as ERISA-based federal jurisdiction existed only for causes of action that accrued after that date.  Id. at 359.  The Fifth Circuit concluded that "for purposes of ERISA a cause of action does not accrue until an application is denied."  Id.  at 361.  Accordingly, although the policy was adopted prior to January 1, 1975, the cause of action accrued after that date because the plaintiffs' attempts to collect benefits under the plan were not denied until later.  Id.

or underpayment of benefits" would not have accrued "absent a denial <u>or</u> <u>underpayment</u>" (emphasis added)).

In <u>Managed Care</u>, this Court considered, <u>inter alia</u>, whether the plaintiffs' ERISA claims were barred by an earlier settlement agreement. 756 F.3d at 1237-40. The settlement agreement released the defendant from all claims "arising on or before the Effective Date, that are, were or could have been asserted" against it. <u>Id.</u> at 1226. This Court noted that a cause of action under ERISA for denial of benefits does not accrue—and "an ERISA lawsuit cannot be filed in federal court"—until a claim for benefits is denied. <u>Id.</u> at 1238. We held that release did not apply to the plaintiffs' causes of action that were based on claims that were not denied until <u>after</u> the settlement agreement's effective date "because, absent a denial <u>or underpayment</u> on or before the Effective Date, such claims would not have accrued"—and therefore could not have been "asserted" at the time of the settlement. <u>Id.</u> (emphasis added).

In the absence of a final or formal denial, three circuits have squarely concluded that an ERISA cause of action accrues—and the limitations period begins to run—when the claimant has reason to know that the claim administrator has clearly repudiated the claim or amount sought. <u>See</u> <u>Riley v. Metro. Life Ins.</u> <u>Co.</u>, 744 F.3d 241, 245 (1st Cir. 2014) ("[A]n ERISA cause of action accrues when, after a claim for benefits is made and a specific sum is sought, the ERISA

14

plan repudiates the claim or the sum sought, and that rejection is clear and made known to the beneficiary."); Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 520-21 (3d Cir. 2007) ("In the ERISA context, . . . a non-fiduciary cause of action accrues when a claim for benefits has been denied. . . . Notably, a formal denial is not required if there has already been a repudiation of the benefits by the fiduciary which was clear and made known the beneficiary."); Gordon v. Deloitte & Touche, LLP Grp. Long Term Disability Plan, 749 F.3d 746, 750-51 (9th Cir. 2014) ("Under federal law, an ERISA cause of action accrues either at the time benefits are actually denied or when the insured has reason to know that the claim has been denied." (quotations omitted)).

In Gordon, a plan participant filed a claim, began receiving benefits, had the claim terminated for failure to support, did not appeal that decision, and then sought review years later. 749 F.3d at 749-50. The Ninth Circuit noted that the claim administrator sent a letter terminating the claimant's benefits but did not mention a final or formal denial at any point. See id. Rather, the Ninth Circuit held that the statute of limitations begins to run "either at the time benefits are actually denied or when the insured has reason to know that the claim has been denied." Id. at 750-51. The Ninth Circuit explained this standard, stating that a claimant "has reason to know that the claim has been denied where there has been a clear and continuing repudiation of a claimant's rights under a plan such that the

claimant could not have reasonably believed but that his benefits had been finally denied." Id. (quotations omitted). Applying that principle, the Ninth Circuit concluded that the lawsuit was untimely because the statute of limitations began to run "no later than" the final day on which the claimant could have initiated an internal appeal. Id. at 751.

In the First Circuit's Riley, a claimant filed a claim for long-term disability benefits, the claim administrator approved his claim, and the claim administrator began paying monthly benefits. 744 F.3d at 243. The claimant later alleged that the claim administrator miscalculated the appropriate amount for his monthly benefits. Id. at 243-44. After having one state-court lawsuit dismissed and another federal lawsuit dismissed, the claimant filed a third action ten years after initially submitting his claim and seven years after first receiving benefits. Id. at 244. Although the claimant never received a formal denial, the First Circuit held that the cause of action was barred by the statute of limitations based upon when he "was aware of his claim for underpayment," id. at 245, and that a new claim does not arise each month the plan submitted an alleged underpayment, id. at 246.

In the Third Circuit's Miller, an individual filed a claim for long-term disability benefits in 1987, which was subsequently approved. 475 F.3d 518. In 2002, the claimant realized that the initial calculation of his benefits was incorrect and that he had been undercompensated every month for the previous 15 years. Id.

16

The Third Circuit held that the "statute of limitations begins to run when a plaintiff discovers or should have discovered the injury that forms the basis of his claim," id. at 520, and that "a formal denial is not required if there has already been a repudiation of the benefits by the fiduciary which was clear and made known the beneficiary," id. at 520-21.

In addition, at least three other circuits have applied a clear-repudiation accrual rule, although under distinguishable fact patterns, and concluded that an ERISA cause of action may accrue prior to a final or formal denial of the plaintiff's claim.  See Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 49 (2d Cir. 1999) ("[W]e hold that a cause of action under ERISA accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff—regardless of whether the plaintiff has filed a formal application for benefits."); Morrison v. Marsh & McLennan Cos., Inc., 439 F.3d 295, 302 (6th Cir. 2006) ("[W]hen a fiduciary gives a claimant clear and unequivocal repudiation of benefits[,] that alone is adequate to commence accrual, regardless of whether the repudiation is formal or not."); Union Pac. R.R. Co. v. Beckham, 138 F.3d 325, 330 (8th Cir. 1998) ("[A]n ERISA beneficiary's cause of action accrues before a formal denial, and even before a claim for benefits is filed, when there has been a repudiation by the fiduciary which is clear and made known to the beneficiary." (quotations and alterations omitted)).

17

With this background, we turn to the facts of Witt's case.

## C.    Witt's Case

Although MetLife contends it sent Witt a formal denial letter in 1997, Witt avers he never received it.  But it is undisputed that MetLife ceased providing benefit payments to Witt after April 30, 1997 and for over 12 years thereafter. Even assuming that Witt did not receive MetLife's termination letter sent on May 22, 1997, MetLife's conduct nonetheless demonstrated a clear and continuing repudiation of Witt's rights by failing to provide him any monthly benefits after April 30, 1997.  Even if we were to require an entire year of denied payments before holding MetLife's nonpayment to constitute a "clear and continuing" repudiation of Witt's rights, Witt would undoubtedly have had reason to know of the repudiation at least by May 1, 1998, and the six-year statute of limitations expired by May 1, 2004, at the latest.  Thus, under the facts here, we need not decide the exact number of missing monthly benefits payments that were required to put Witt on notice that his claim had been clearly repudiated and thus denied.  In order to decide this case, we simply hold that, after the 12 months of nonpayment under the facts of this case, Witt could not have reasonably believed but that his claim had been denied.

We reject Witt's attempt to inexorably tie the start of the limitations period to a formal denial letter that must also be produced in order to enforce the statute.

One reason for the existence of statutes of limitations is that "[j]ust determinations of fact cannot be made when, because of the passage of time, the memories of witnesses have faded or evidence is lost."  Wilson v. Garcia, 471 U.S. 261, 271, 105 S. Ct. 1938, 1944 (1985) (emphasis added), superseded by statute on other grounds, 28 U.S.C. § 1658(a).  Thus, we reject Witt's attempt to exploit MetLife's failure to locate a 12-year-old document where Witt had reason to know of the acts giving rise to his cause of action, regardless of whether he received the 1997 letter.  Adopting Witt's position would undermine the very purpose of statutes of limitations, which "characteristically embody a policy of repose, designed to protect defendants" and "foster the elimination of stale claims, and certainty about . . . a defendant's potential liabilities."  Lozano v. Montoya Alvarez, 572 U.S. ___, ___, 134 S. Ct. 1224, 1234 (2014) (quotations omitted).

In sum, we conclude Witt's ERISA complaint in 2012 for benefits from May 1, 1997 forward is barred by the six-year statute of limitations.

## D.    The Alleged "New Claim"

In the alternative, Witt argues that the statute of limitations could not have run on his cause of action because MetLife "treated [his] claim for benefits after May 1, 1997, as a new claim unaffected by its termination of his benefits on or before that date for failure to support."  The thrust of Witt's argument is that MetLife's January 26, 2010 letter asked for documentation of Witt's disability

19

after May 1, 1997—when the benefits were terminated—and it therefore treated Witt's submission of post-1997 documentation as a new claim for benefits.

The record refutes this argument. MetLife's letter stated that Witt's claim was paid for the period of December 29, 1995 through April 30, 1997. The 2010 letter also informed attorney Sullivan that Witt's claim was "[t]erminated effective May 1, 1997," but that MetLife would review that claim "for benefits beyond May 1, 1997" if Witt submitted supporting medical documentation. MetLife thus referred to an old claim that it might be willing to reinstate, not a separate, new claim.

And the fact that MetLife asked for medical documentation after May 1, 1997, does not convert the review of Witt's old claim into a new-claim review. Witt received benefits through April 30, 1997, and his claim was thereafter terminated for failure to provide supporting documentation. Accordingly, the only relevant medical records MetLife required were ones subsequent to 1997. MetLife's recognition of this fact is entirely consistent with a claim administrator treating the situation as a courtesy review of a prior claim, not as a "new" claim. Additionally, Witt's own actions demonstrate that it was not a "new" claim: Of the 10 documents Witt submitted in support of his claim in 2011, three were from 1995—prior to May 1, 1997.

20

For all of these reasons, the statutory clock did not begin to run anew in 2012.  Because Witt brought this action on June 14, 2012—more than 14 years after the commencement of the statutory period, his claim is time-barred.

## IV. WAIVER

Even if his lawsuit is untimely under the statute of limitations, Witt argues the defendants' conduct waived that defense because MetLife undertook to review Witt's 1997 claim, its 2012 denial letter did not assert or mention MetLife's statute-of-limitation defense, and MetLife's 2012 denial letter advised Witt of his right to bring a civil action under § 502(a) of ERISA.[5]

In this regard, Witt asserts waiver and does not make an estoppel or forfeiture claim.[6]  And in the past we have left open the question of whether waiver principles might apply under the federal common law in the ERISA context.  See Glass v. United of Omaha Life Ins. Co., 33 F.3d 1341, 1348 (11th Cir. 1994).  We need not answer that question here because Witt's waiver argument fails in any event.

---

[5]Notably, this case does not involve waiver of a Plan deadline for a proof of loss or an appeal.  Rather, it involves only waiver of a statute-of-limitations defense.

[6]It is important to note the difference between three related, but distinct, legal principles: forfeiture, waiver, and estoppel.  Forfeiture "is the failure to make the timely assertion of a right."  United States v. Olano, 507 U.S. 725, 733, 113 S. Ct. 1770, 1777 (1993).  Estoppel requires detrimental reliance and "exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's acts were repudiated."  Glass v. United of Omaha Life Ins. Co., 33 F.3d 1341, 1347 (11th Cir. 1994).  Witt's briefs never use the word "forfeiture" or "estoppel."

21

Both parties agree that waiver is "the voluntary, intentional relinquishment of a known right." See id. at 1347. Waiver requires "(1) the existence[,] at the time of the waiver[, of] a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage, or benefit." In re Garfinkle, 672 F.2d 1340, 1347 (11th Cir. 1982). Where a party alleges an implied waiver, "the acts, conduct, or circumstances relied upon to show waiver must make out a clear case." Id. Witt has not shown a waiver for several reasons.

First, before Witt's attorney contacted MetLife in 2009 and pursued Witt's claim for benefits after May 1, 1997, the six-year statute of limitations had already expired on that legal claim. MetLife's voluntary reconsideration of Witt's benefit claim cannot revive or resurrect that already-time-barred claim.

Second, Witt can point to no document where MetLife expressly waived its right to raise a statute-of-limitations defense. Thus, Witt at best alleges only an implied waiver.

Witt relies upon MetLife's failure to raise the timeliness defense in its letters during its 2009-2012 courtesy review. But those letters came in the context of a review of his dozen-year-old claim. MetLife retained the option of voluntarily reinstating Witt's claim if it found the claim meritorious, even though it was untimely under the Plan's policy provisions. In fact, MetLife did this once before,

22

when it initially approved Witt's claim. When it did so, even though the claim was late, MetLife granted Witt retroactive benefits effective December 29, 1995.

In light of this context, and absent any evidence of an express declaration to relinquish the benefit of the statute of limitations, Witt failed to establish that MetLife had the requisite intent to waive the statute-of-limitations defense. Put another way, Witt failed to make a "clear case" that the implied waiver was intentional based on "the acts, conduct, [and] circumstances" of MetLife's failure to raise the issue of untimeliness in its courtesy review. See Garfinkle, 672 F.2d at 1347.

What Witt basically argues is a "something-for-nothing" waiver claim. Cf. Glass, 33 F.3d at 1348. Witt introduced no evidence that MetLife collected further premiums from Witt in 2009-2012 or received any consideration from Witt during that time. While in Glass this Court left open the question of whether waiver might apply under the federal common law in the ERISA context, we rejected a "something-for-nothing" waiver claim where the defendant made a misrepresentation but did not attempt to receive an unjust benefit, such as premiums.[7] Id.

---

[7]In Glass, the defendant insurance company did accept premium payments from a claimant who was erroneously included on an eligibility list created by the plan administrator. 33 F.3d at 1348 n.6. However, there was "no evidence that [the defendant] attempted to unjustly enrich itself at the expense of an ineligible plan participant," and the insurance company "attempted to return the few premium payments that it had accepted" once it realized the error. Id. at 1348 & n.6.

23

Witt cites no ERISA case applying a waiver of a statute-of-limitations defense. Rather, most of the cases Witt cites involved a plan seeking to have its denial of a claim affirmed in court on a contractual requirement created by the Plan itself, which was not relied upon in the formal denial issued pursuant to 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1.[8] See, e.g., Reich v. Ladish Co. Inc., 306 F.3d 519, 524 n.1 (7th Cir. 2002); Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 688-89 (7th Cir. 1992); Haisley v. Sedgwick Claims Mgmt. Servs., Inc., 776 F. Supp. 2d 33, 53 (W.D. Pa. 2011).

The purpose of the requirements under § 1133 is to "enable the claimant to prepare adequately 'for any further administrative review, as well as appeal to the federal courts.'" Halpin, 962 F.2d at 689 (quoting Richardson v. Cent. States, Se. & Sw. Areas Pension Fund, 645 F.2d 660, 665 (8th Cir. 1981)). By contrast, a statute of limitations is a mechanism imposed by law allowing a defendant to rest assured that the claim is no longer subject to court action. See Lozano, 572 U.S. at ___, 134 S. Ct. at 1234. As the Ninth Circuit has noted, "[w]hile the doctrine of waiver may be applied to prevent insurers from denying claims for one reason, then coming forward with several other reasons . . . , such an incentive is not

---

[8]Section 1133 of Title 29 requires all employee benefit plans to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). Section 2560.503-1 of Title 29 of the Code of Federal Regulations sets out in greater detail the specific steps a plan must take when determining whether an individual qualifies for benefits. See, e.g., 29 C.F.R. § 2560.503-1(g) (manner and content of notification of benefit determination).

24

needed when it comes to statutes of limitation defenses." Gordon, 749 F.3d at 753 (quotations omitted).

Finally, we observe that requiring ERISA claim administrators to expressly base their reconsideration of a stale claim on timeliness grounds is likely to lead to plans declining to offer courtesy reviews—or any reopening of the administrative process—for fear of waiving a statutory timeliness defense. Such an outcome would prevent plan participants with meritorious, though untimely, claims from receiving a review—and possibly benefits. At the same time, it would aid only those individuals who fail to file claims in a timely fashion and then have their subsequent claims denied on the merits.

## V. CONCLUSION

Witt's complaint was untimely under the applicable statute of limitations, which began to run when he had reason to know that MetLife clearly repudiated his benefits claim. This occurred, at the latest, on May 1, 1998. MetLife's subsequent courtesy review did not restart the statutory clock. Additionally, MetLife did not waive any defense based on the statute of limitations by failing to specify untimeliness as a basis for denying the claim after its courtesy review. Therefore, we affirm the district court's grant of summary judgment in favor of the defendants.

**AFFIRMED.**

25