**W.A. GRIFFIN, MD, pro se, Plaintiff,**

**v.**

**BLUE CROSS AND BLUE SHIELD OF ALABAMA and the General Electric Company, Defendants.**

**CIVIL ACTION NO. 1:14–CV–01610–AT**

United States District Court, N.D. Georgia, Atlanta Division.

Signed November 19, 2015

W. A. Griffin, Atlanta, GA, pro se.

Betty Bush Walker, Bush & Miller, Attorneys at Law, P.C., College Park, GA, for Plaintiff.

Jaime L. Theriot, Lindsey B. Mann, Troutman Sanders, LLP, Atlanta, GA, Cavender C. Kimble, Balch & Bingham, Birmingham, AL, for Defendants.

## *ORDER*

Amy Totenberg, United States District Judge

This matter, one of a series of actions brought by Dr. Griffin,[1] is before the Court on Defendants' Motion to Dismiss the Amended Complaint [Doc. 43]. For the following reasons, the Motion is **GRANTED.**

1. All of the cases in this series contain similar allegations against similarly-situated defendants. *See Griffin v. Blue Cross and Blue Shield Healthcare Plan of Ga., Inc., et al.,* No. 1:14–cv–1610–AT (N.D.Ga. filed May 28, 2014); *Griffin v. Southern Company Servs., Inc.,* No. 1:15–cv–0115–AT (N.D.Ga. filed Jan. 14, 2015); *Griffin v. SunTrust Bank, Inc.,* No. (N.D.Ga. filed Jan. 16, 2015); *Griffin v. FO-CUS Brands Inc.,* No. 1:15–cv–0170–AT (N.D.Ga. filed Jan. 20, 2015); *Griffin v. Health Sys. Mgmt., Inc.,* No. 1:15–cv–0171–AT (N.D.Ga. filed Jan. 20, 2015); *Griffin v. Lock-heed Martin Corp.,* No. (N.D.Ga. filed Jan. 28, 2015); *Griffin v. Gen. Mills, Inc.,* No. (N.D.Ga. filed Jan. 28, 2015); *Griffin v. Old-castle, Inc.,* No 1:15–cv–0269–AT (N.D.Ga. filed Jan 28, 2015); *Griffin v. Habitat for Human. Int'l, Inc.,* No. (N.D.Ga. filed Feb. 6, 2015); *Griffin v. Verizon Comm., Inc.,* No. (N.D.Ga. filed Feb. 26, 2015); *Griffin v. Humana Employers Health Plan of Ga., Inc.,* No. (N.D.Ga. filed Feb. 26, 2015); *Griffin v. Aetna Health Inc. et al.,* No. 1:15–cv–3750–AT (N.D.Ga. filed Oct. 26, 2015).

## I. LEGAL STANDARD

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1216 (3d ed. 2002); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir.1993). Plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

## II. BACKGROUND FACTS

Plaintiff Griffin operates a solo dermatology practice called Intown Dermatology. (Compl.¶ 3.) As a condition of service, Plaintiff requires her patients to assign their health insurance benefits to her. (Am. Compl. at 2 ¶ 1.) Having received this assignment from patient VH, Plaintiff performed three surgeries on VH and then attempted to collect from VH's insurance. (*Id.* ¶¶ 22, 30, 33.) VH is a beneficiary of a General Electric ("GE") group health benefit plan (the "Plan") governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. ch. 18. (*Id.* ¶ 3.)

After each surgery, Plaintiff was paid less than she believed she was owed as an "out-of-network" provider who was told she would be compensated at the "usual customary and reasonable benefit levels." (*Id.*) Each time, Plaintiff sought recompense through both "level 1" and "level 2" appeals, (*id.*¶¶ 24–37), including in each appeal a request for a copy of the summary plan description and other documents relating to the calculation of amounts paid. All six of those times, Plaintiff's appeal was denied and no plan information was relayed.

All six of those benefit payment appeals appear to have been sent to Blue Cross Blue Shield Healthcare Plan of Georgia ("BCBSHP GA"), (*id.*), a liaison to Defendant Blue Cross and Blue Shield of Alabama ("BCBS AL") for claims made by Georgia healthcare providers. And all six of those appeals, and all three of the initial claims, included as an attachment the assignment of rights and benefits Plaintiff received from VH.

Plaintiff wants her money, and she wants penalties against all companies that allegedly failed to perform their duties under ERISA. Consequently, she has filed a new Amended Complaint alleging three claims against both Defendants. Count 1 alleges failure to pay ERISA plan benefits in violation of 29 U.S.C. § 1132(a)(1)(B). Count 2 alleges failure to disclose or to produce plan documents pursuant to 29 U.S.C. §§ 1024(b), 1104, and 1133(2). And Count 3 alleges that GE is liable under 29 U.S.C. § 1105(a)(2) for the breach of duty of co-fiduciary BCBS AL to the extent GE failed to sufficiently monitor BCBS AL's work. In total,

Plaintiff seeks $8,718.94 for unpaid services and $104,910.00 in penalties. (*Id.* at 13.)

## III. DISCUSSION

Defendants argue that the Complaint should be dismissed because Plaintiff has not alleged sufficient facts to demonstrate that she has received a valid assignment of rights under the benefit plan. Defendants also argue, in the alternative, that Count 2 should be dismissed because it already was dismissed earlier in the lawsuit, and that Counts 2 and 3 should be dismissed because any assignment Dr. Griffin received was not broad enough to assign the right to assert claims for statutory penalties or breaches of fiduciary duty. Dr. Griffin responds that Defendants waived and/or are estopped from raising any invalid assignment argument at this point, and also points to the broad language of the assignment.

### A. Equitable Estoppel and/or Waiver Argument

Before reaching Defendants' anti-assignment argument, the Court must address Plaintiff's contention that Defendants may not now, at this stage of the claims and litigation process, question the validity of Plaintiff's assignment. Specifically, Plaintiff asserts that Defendants are precluded from relying on the anti-assignment provision in the Plan because Defendants have received the assignment of benefits nine times throughout the appeals process and even made a direct payment under the Plan and never once mentioned anything about the validity of the assignment.

It is not clear whether the basis of Plaintiff's argument is equitable estoppel or waiver, two distinct but oft confused doctrines. *See Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir.1994) ("[T]he terms 'waiver' and 'estoppel' have been so frequently confused and abused in decisions on insurance law that it seems preferable to define those terms accurately in the inception of this discussion.") (quoting Appleman, Insurance Law and Practice § 9251 at 48889 (1981)). Accordingly, because Plaintiff is *pro se,* the Court will analyze both.

### 1. Equitable Estoppel

Although ERISA is "a comprehensive statute designed to federalize the regulation of employee welfare benefit plans," the Eleventh Circuit has recognized that the statute contains interstices which the federal courts are expected to fill in with a "federal common law of rights and regulations under ERISA-regulated plans." *Glass v. United Omaha of Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir.1994) (citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). To fill the gaps, courts in this Circuit have crafted "a very narrow common law doctrine under ERISA for equitable estoppel when (1) the provisions of the plan at issue are ambiguous, and (2) representations are made which constitute an oral interpretation of the ambiguity." *Id.* (citing *Kane v. Aetna Life Ins.,* 893 F.2d 1283, 1285–86 (11th Cir.1990). Conversely, estoppel is not available either (1) for oral *modifications* (as opposed to interpretations); or (2) when the written plan is unambiguous. *Id.* (citing *Alday v. Container Corp.,* 906 F.2d 660, 666 (11th Cir. 1990); *Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986)). To determine whether an ambiguity exists in the terms of an insurance contract, courts look at the entirety of the contract. *Dahl–Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d

1379, 1381–82 (11th Cir.1993). In doing so, "[c]ourts may not rewrite contracts or add meaning to create an ambiguity." *Id.* at 1382.

■ The relevant provision of the Plan in this case reads:

> A Covered Person may assign his or her right to receive plan benefits to a health care provider only with the consent of the claims administrator, in its sole discretion, except as may be required by applicable law. Assignments must be in writing. If a document is not sufficient to constitute an assignment, as determined by the claims administrator, then the plan will not consider an assignment to have been made. An assignment is not binding until the claims administrator receives and acknowledges in writing the original or copy of the assignment before payment of the benefit.

(Doc. 10–1 at 15.)[2] Plaintiff does not argue that the provision is ambiguous, and the Court finds that it is not. It clearly states that an assignment may be made "only with the consent of the claims administrator," and that such an assignment "is not binding" until the claims administrator "receives and acknowledges" it "in writing." (Doc. 10–1 at 15.) There is nothing ambiguous about this provision. Thus, equitable estoppel is unavailable to preclude Defendants' reliance on the provision.

2. Consistent with the Court's Order on Defendants' first Motion to Dismiss in this case, (Doc. 26 at 7 n.4), the Court considers the plan documentation in the record of this case without converting Defendants' motion to a summary judgment motion because the document is referred to in the Complaint, is central to Plaintiff's claims, and its authenticity is not disputed. *See Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364 (11th Cir.1997) ("[W]here the plaintiff refers

### 2. *Waiver*

■ Waiver is "the voluntary, intentional relinquishment of a known right." *Glass,* 33 F.3d at 1347 (citing *Pitts By and Through Pitts v. American Sec. Life Ins. Co.,* 931 F.2d 351, 355 (5th Cir.1991); Appleman, Insurance Law and Practice, § 9251, at 488–89 (1981)). Waiver can be express or implied. "Where a party alleges an implied waiver, the acts, conduct, or circumstances relied upon to show waiver must make out a clear case" of intentional relinquishment. *Witt v. Metro. Life Ins. Co.,* 772 F.3d 1269, 1279 (11th Cir.2014) (quotation omitted).

The Eleventh Circuit routinely denies waiver under circumstances similar to those in this case. For example, in *Glass,* the insurance company accepted premium payments from Mr. Glass for a few months, paid "approximately $118,000 in claims under the health insurance coverage provided by the plan," and then refused to make payments under an accompanying life insurance policy. *Glass,* 33 F.3d at 1344. Glass's wife brought ERISA claims for wrongfully denied benefits, breach of fiduciary duty, and failure to provide accurate and timely plan information, arguing in part that the plan had waived any argument that Mr. Glass was ineligible (because he did not work at least 30 hours per week) when it had accepted

to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." (citing *Venture Assoc. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993)).

premiums[3] and paid claims. The court denied waiver and found insufficient evidence "either of intentional relinquishment of a known right or of any unjust benefit circumstance." *Id.* at 1348.

Similarly, in *Martinez–Claib, M.D. v. Bus. Men's Assur. Co. of Am.*, 349 Fed. Appx. 522, 525 (11th Cir.2009), the plaintiff argued that the insurance company waived certain arguments for denying coverage when it did not rely on those arguments in the claim denial process. The court rejected this waiver argument, holding an insurance company that denies a claim based on one plan provision (*i.e.*, date of termination) is fully entitled to assert, once in litigation, that coverage was mistakenly denied under that provision but properly denied under two other provisions (*i.e.*, failure to give timely notice of a claim and the preexisting condition exclusion). The court reasoned that the insurance company, by relying on only one reason for denying benefits, "did not intentionally give up the right to argue the other grounds for denying benefits," if the first ground had proven incorrect. *Id. Martinez–Claib* even recognized that it was the insurance company's "fault that there was no opportunity to correct [the reason for denial] through the appeals process." *Id.* Still, that did not convince the court that an implied waiver had occurred. *See also Griswell v. Reliance Std. Ins. Co.*, 209 Fed.Appx. 888 (11th Cir.2006) (holding insurance company did not waive its right to rely on exclusion for pre-existing condition when it had paid and then subsequently terminated benefits after learning of employee's preexisting condition).

Finally, in *Witt v. Metro. Life Ins. Co.*, 772 F.3d 1269, 1280 (11th Cir.2014), the plaintiff enrolled in a MetLife insurance policy and paid premiums for five months. MetLife terminated the policy when the plaintiff failed to provide sufficient proof of disability. *Id.* at 1272. Twelve years later, MetLife re-evaluated his claim at his request and once again denied the claim for the same reason. The plaintiff tried to bring an ERISA claim for unpaid benefits and MetLife was granted summary judgment based on the statute of limitations defense because the initial denial had occurred more than six years before the suit was instituted.

The Eleventh Circuit affirmed. The court explained that MetLife's "voluntary reconsideration of Witt's benefit claim cannot revive or resurrect [his] already-time-barred claim," and "Witt can point to no document where MetLife expressly waived its right to raise a statute-of-limitations defense." *Id.* at 1279. As for an implied waiver, the court held:

> "Witt failed to establish that MetLife had the requisite intent to waive the statute-of-limitations defense. Put another way, Witt failed to make a "clear case" that the implied waiver was intentional based on "the acts, conduct, [and] circumstances" of MetLife's failure to raise the issue of untimeliness in its courtesy review

*Id.* at 1280.

■ Given this context, Plaintiff's argument—that Defendants waived the right to question the effectiveness of Plaintiff's assignment by not questioning it prior to the current motion to dismiss—must fail. Plaintiff has not plead that she received a document in which Defendants waived

---

**3.** The insurance company attempted to return the premiums once it realized its mistake. *Id.* at 1348 n. 6.

their right to question Plaintiff's standing based on an ineffective assignment. Even accepting Plaintiff's factual allegations as true and drawing all inferences in her favor, which the Court must at this stage, the conditions and circumstances she alleges do not constitute waiver as a matter of law, though the Court is sympathetic to her complaints that this might be unfair. As in *Glass*, the allegation that Defendants made a direct payment to Plaintiff—albeit for an allegedly insufficient amount—does not equate to an implied waiver. And as in *Martinez-Claib*, the failure to recognize the anti-assignment provision as reason for denial of the payment to Dr. Griffin throughout the appeals process—in which Plaintiff allegedly submitted the assignment 9 times—also does not suffice to allege an implied waiver.

In sum, Plaintiff has not plead facts sufficient to show a "clear case" that "the acts, conduct, and circumstances" of Defendants' delay in questioning the assignment were a voluntary and intentional relinquishment of a known right. *See Witt*, 772 F.3d at 1280. Defendants may have committed an oversight by not looking deeply at the assignment, and it would have been far better for Defendants initial motion to dismiss, filed almost a year and a half ago, to address this issue. But, as explained above, those allegations do not suffice.

Furthermore, as Plaintiff has amended her Complaint again, and "an amended complaint supersedes the original complaint," *Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir.1982), Defendants are entitled to file a new motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and raise any appropriate defenses therein. Plaintiff has not presented the Court with any binding authority that requires a different result. Thus, Defendants have not waived their anti-assignment argument, nor, for the reasons stated in the previous section, are they equitably stopped from raising it now. The Court now turns to the substance of that anti-assignment argument.

### B.   Anti–Assignment Clause

■ Defendants urge dismissal of all counts based on Plaintiff's lack of standing as a result of non-compliance with the Plan's anti-assignment provision. Plaintiff argues, *inter alia*, that *Cagle v. Bruner*, 112 F.3d 1510 (11th Cir.1997), requires recognition of assignments in this circuit.

As a preliminary matter, Plaintiff misreads *Cagle* and ignores subsequent precedent. *Cagle* held only that "neither § 1132(a) nor any other ERISA provision prevents derivative standing based upon an assignment of rights from an entity listed in that subsection." 112 F.3d at 1515. *Cagle* does not stand for the proposition that assignments *must* be recognized, despite contrary or conditional plan language.

Indeed, that lacuna in *Cagle* was pointed out both by the *Cagle* court itself and by *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*:

> Although *Cagle* favors the recognition of assignments in ERISA-governed plans, *Cagle* does not control the outcome of this case. The *Cagle* court expressly declined to consider the issue with which we are faced today: "whether a provider-assignee can sue an ERISA plan, where the terms of the plan forbid such an assignment." *Cagle*, 112 F.3d at 1516, n. 3.

371 F.3d 1291, 1294–95 (11th Cir.2004). In *Physicians Multispecialty Group*, a healthcare provider obtained an assign-

ment of benefits from the estate of a deceased participant in an ERISA-governed plan. *Id.* at 1293. When the plan did not pay as much as the provider believed it was owed for services rendered to the deceased, the provider sued for unpaid benefits under 29 U.S.C. § 1132(a)(1)(B)— the same provision under which Plaintiff Griffin brings Count 1 of her Amended Complaint. The assignment issue was not fully briefed or decided by the district court, and summary judgment was granted in favor of the provider. *Id.*

The Court of Appeals reversed. After the issue *was* fully briefed, the Eleventh Circuit held that an ERISA-governed healthcare plan may prohibit the assignment of benefits to a third-party, including to a healthcare provider. Specifically, the court stated:

> Under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), two categories of persons exist who can sue for benefits under an ERISA-governed plan: plan beneficiaries and plan participants. Healthcare providers ... are generally not "participants" or "beneficiaries" under ERISA and thus lack independent standing to sue under ERISA. Healthcare providers may acquire derivative standing, however, by obtaining a written assignment from a "beneficiary" or "participant" of his right to payment of benefits under an ERISA-governed plan.
>
> ...
>
> [But because] ERISA-governed plans are contracts, the parties are free to bargain for certain provisions in the plan—like assignability. Thus, an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable.

*Id.* at 1294–1296 (citations omitted).

The anti-assignment clause considered in *Physicians Multispecialty Group* was found to be unambiguous. It read:

> Except as applicable law may otherwise require, no amount payable at any time hereunder shall be subject in any manner to alienation by ... assignment ... of any kind[ ]. Any attempt to ... assign ... any such amount, whether presently or hereafter payable, shall be void....

*Id.* at 1295. As the clause was unambiguous, it precluded the healthcare provider's "maintenance of an ERISA action." *Id.* at 1296. *See also Ward v. Ret. Bd. of Bert Bell/Pete Rozelle NFL Player Ret. Plan,* 643 F.3d 1331, 1333–34 (11th Cir.2011) (holding same and citing *Physicians Multispecialty Group*).

The anti-assignment clause at issue here is similarly unambiguous. It reads, in pertinent part:

> A Covered Person may assign his or her right to receive plan benefits to a health care provider only with the consent of the claims administrator, in its sole discretion, except as may be required by applicable law. Assignments must be in writing. If a document is not sufficient to constitute an assignment, as determined by the claims administrator, then the plan will not consider an assignment to have been made. An assignment is not binding until the claims administrator receives and acknowledges in writing the original or copy of the assignment before payment of the benefit.

(Doc. 10–1 at 15.) Under *Physicians Multispecialty Group,* this unambiguous anti-assignment clause is valid and enforceable.

The anti-assignment provision requires, for an assignment to be effective, the claims administrator to give consent and to acknowledge the assignment in writing. While Plaintiff alleges that she received an assignment from VH, Plaintiff does not

allege in her Amended Complaint that she received the consent of the claims administrator, nor that she received the claims administrator's written acknowledgement of the assignment. Both are preconditions to creating a binding assignment under the Plan language. Plaintiff could have attempted to remedy the pleading deficiency by seeking leave to file another amended complaint in which she would sufficiently allege standing based on a valid assignment that complies with the plan. She did not. Nor does she argue in her brief that she did receive consent and acknowledgment of the assignment. Instead, she argues only that Defendants should not be able to raise the assignment issue at this stage, an argument that has some persuasive appeal but was ultimately dispensed with above.

Accordingly, Plaintiff has not sufficiently plead that she has standing to bring a lawsuit for civil remedies pursuant to 29 U.S.C. § 1132(a)(1)(b). Under *Physicians Multispecialty Group*, the Plan's anti-assignment clause precludes Plaintiff's "maintenance of an ERISA action" based on an impermissible assignment. *Physicians Multispecialty Group*, 371 F.3d at 1296.

In addition, as the Court finds the assignment invalid, Plaintiff's other ERISA-based claims must also dismissed for lack of standing. Without the assignment, Plaintiff is neither a participant,[4] a beneficiary,[5] nor a fiduciary[6] under the Plan.

According, Plaintiff does not have standing to bring her claims. *See* 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(2), 1132(a)(3). Defendants' Motion [Doc. 43] is **GRANTED** and the Amended Complaint is **DISMISSED WITHOUT PREJUDICE** for lack of standing.

The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED** this 19th day of November, 2015.

---

**4.** "The term 'participant' means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. 1002(7) (2012).

**5.** "The term 'beneficiary' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8) (2012).

