**[PUBLISH]**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 3,, 2004
THOMAS K. KAHN
CLERK

No. 03-14202

D. C. Docket No. 02-00102 CV-DHB-1

PHYSICIANS MULTISPECIALTY GROUP,

Plaintiff-Appellee,

versus

THE HEALTH CARE PLAN OF
HORTON HOMES, INC.,
HORTON HOMES, INC.,

Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of Georgia

(JUNE 3, 2004)

Before DUBINA and COX, Circuit Judges, and OWENS*, District Judge.

_____

*Honorable Wilbur D. Owens, Jr., United States District Judge for the Middle District of
Georgia, sitting by designation.

DUBINA, Circuit Judge:

Appellants, Horton Homes, Inc. ("Horton Homes") and Health Care Plan of Horton Homes, Inc. (the "Plan"), appeal the district court's order granting summary judgment to Plaintiff-Appellee Physicians' Multispecialty Group ("PMG"), on its Employee Retirement Income Security Act ("ERISA") claim. Answering a question of first impression in our circuit, we reverse the district court's order granting summary judgment on the basis that the anti-assignment clause in the Plan precludes PMG from maintaining an ERISA action based on its reliance upon an assignment of benefits.

## I.  BACKGROUND

Horton Homes offered and funded a medical benefit plan to its employees pursuant to ERISA, 29 U.S.C.A. § 1001, *et seq.*  The Plan extended coverage to dependents of Horton Homes employees as long as the dependents met certain conditions.

In September 1999, Linton Franklin ("Franklin") began working for Horton Homes and enrolled himself, his daughter Candace Murray ("Murray"), and four other minor children in the Plan.  In June 2001, Murray contracted a severe infection for which she was hospitalized and treated by physicians practicing with

PMG. Murray remained hospitalized for over a month until she died on July 21, 2001.

Shortly after Murray's death, PMG obtained a written assignment from the administrator of Murray's estate and filed a claim with the Plan for $68,230 to recover the cost of medical services it rendered to Murray. ACS Benefit Services, Inc. ("ACS"), the Plan's third-party administrator, denied PMG's claim on the ground that Murray was not an eligible dependent child of Franklin because she was not "principally dependent" upon Franklin for financial support, as required by the Plan. PMG appealed ACS's denial of benefits to Horton Homes, which upheld ACS's decision. Horton Homes concluded that Murray was not "principally dependent" upon Franklin for support because Franklin's limited support of Murray was outweighed by other sources of support, such as Murray's own earnings from her part-time job.

PMG then initiated the present action, asserting an ERISA claim seeking to establish Murray's eligibility for benefits and to recover the costs of its medical services rendered, and two state law claims. PMG also sought attorneys' fees and costs. The district court dismissed the state law claims by consent order. Concerned about PMG's ability to maintain an ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), action, the district court raised the issue *sua sponte* at the summary

judgment hearing. Horton Homes followed the district court's lead and argued that PMG lacked statutory standing to bring suit. However, when Horton Homes declined to further address the statutory standing issue in its supplementary summary judgment briefing, the district court concluded that any dispute about PMG's standing was moot. Therefore, the district court granted PMG's motion for summary judgment and directed Horton Homes to pay PMG $68,230, or an amount that otherwise reflected the proper costs of the medical services PMG rendered to Murray.

## II. ISSUE

Whether the district court erred in granting summary judgment for PMG.

## III. STANDARD OF REVIEW

This court reviews *de novo* the district court's order granting summary judgment. *McCormick v. City of Fort Lauderdale, Fla.*, 333 F.3d 1234, 1242-43 (11th Cir. 2003).

## IV. DISCUSSION

Initially, PMG contends that Horton Homes waived the issue whether PMG had "standing" to sue under ERISA. We disagree since Horton Homes argued this issue to the district court. We also note that the "standing" at issue here is not the standing label given to the subject-matter-jurisdictional doctrine of justiciability which considers injury, traceability to the defendant, and redressability. *See Northeastern Fla. Chapter of Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 663-64, 113 S. Ct. 2297, 2302, 124 L. Ed. 2d 586 (1993). The jurisdictional question remaining here, where PMS has asserted a federal statutory cause of action, and where Horton Homes has challenged PMG's ability to maintain the action, is whether PMS has made a nonfrivolous claim under the statute that it invokes. *McGinnis v. Ingram Equip. Co.*, 918 F.2d 1491, 1494 (11th Cir. 1990) (*en banc*).

Thus, in the context of this ERISA case, we must determine whether PMG's claim that it was a beneficiary of the ERISA plan by virtue of its assignment from the administrator of Murray's estate, is either clearly immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial or frivolous. *See Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1352-54 (11th Cir. 1998) (finding subject matter jurisdiction as Blue Cross's claim that it was a fiduciary for purposes of ERISA was not frivolous or made solely to obtain federal

jurisdiction). We conclude that PMG's claim is not frivolous because it depends on our answer to the question of whether a provider-assignee can sue an ERISA plan, where the terms of the plan forbid such an assignment, which is an issue of first impression in this circuit. *See Cagle v. Bruner*, 112 F.3d 1510, 1516, n.3 (11th Cir. 1997).

Under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), two categories of persons exist who can sue for benefits under an ERISA-governed plan: plan beneficiaries[1] and plan participants.[2] 29 U.S.C. § 1132(a)(1); *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001). Healthcare providers, such as PMG, are generally not "participants" or "beneficiaries" under ERISA and thus lack independent standing to sue under ERISA. *Hobbs*, 276 at 1241; *See also Cagle*, 112 F.3d at 1514. Healthcare providers may acquire derivative standing, however, by obtaining a written assignment from a "beneficiary" or "participant"

---

[1] ERISA defines "beneficiary" to mean "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

[2] ERISA defines "participant" as

any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7).

6

of his right to payment of benefits under an ERISA-governed plan. *Hobbs*, 276 F.3d at 1241.

Although ERISA § 206(d), 29 U.S.C. § 1056(d), expressly prohibits assignment of pension benefits, this court has commented that "neither 1132(a) nor any other ERISA provision prevents derivative standing based upon an assignment of rights from [ERISA participants or beneficiaries.]" *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001) (quoting *Cagle*, 112 F.3d at 1515). This court stated in *Cagle* that:

> [i]f provider-assignees cannot sue the ERISA plan for payment, they will bill the participant or beneficiary directly for the insured['s] medical bills, and the participant or beneficiary will be required to bring suit against the benefit plan when claims go unpaid. On the other hand, if provider-assignees can sue for payment of benefits, an assignment will transfer the burden of bringing suit from plan participants and beneficiaries to providers, who are better situated and financed to pursue an action for benefits owed for their services.

*Cagle*, 112 F.3d at 1515 (internal citations and quotations omitted).

Although *Cagle* favors the recognition of assignments in ERISA-governed plans, *Cagle* does not control the outcome of this case. The *Cagle* court expressly declined to consider the issue with which we are faced today: "whether a provider-assignee can sue an ERISA plan, where the terms of the plan forbid such an

assignment." *Cagle*, 112 F.3d at 1516, n.3. The Plan at issue contains such a provision:

**ASSIGNABILITY**

Amounts payable at any time may be used to make direct payments to health care providers. Except as applicable law may otherwise require, no amount payable at any time hereunder shall be subject in any manner to alienation by . . . assignment . . . of any kind[]. Any attempt to . . . assign . . . any such amount, whether presently or hereafter payable, shall be void. . . .

[Vol. 1, Doc. 14, Exh. A, at 24].

Considering this issue, we are persuaded by the reasoning of the majority of federal courts that have concluded that an assignment is ineffectual if the plan contains an unambiguous anti-assignment provision. *See, e.g., City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.*, 156 F.3d 223, 229 (1st Cir. 1998) ("Consistent with the other circuits which have addressed this issue, we hold that ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting parties."); *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc.*, 49 F.3d 1460, 1464-65 (10th Cir. 1995) ("ERISA's silence on the issue of the assignability of insurance benefits leaves the matter to the agreement of the contracting parties."); *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1478 (9th Cir. 1991) ("As a

8

general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions."); *Washington Hosp. Ctr. Corp. v. Group Hospitalization and Med. Servs., Inc.*, 758 F. Supp. 750, 755 (D.D.C. 1991) (holding that an anti-assignment provision was valid and enforceable after concluding that enforcement of the provision was not contrary to public policy); *see also, e.g., Neurological Res., P.C. v. Anthem Ins. Cos.*, 61 F. Supp. 2d 840, 845-46 (S.D. Ind. 1999); *Renfrew Ctr. v. Blue Cross & Blue Shield of Cent. N.Y., Inc.*, No. 94-CV-1527, 1997 WL 204309, at *3-4 (N.D.N.Y. Apr. 10, 1997); *Home Nutritional Servs., Inc. v. Blue Cross & Blue Shield of Mass., Inc.*, Nos. 93-CV-10211-Z, 93-CV-10658-Z, 1993 WL 343674, at *1-2 (D. Mass. Aug. 24, 1993); *Parkside Lutheran Hosp. v. R.J. Zeltner & Assocs., Inc.*, 788 F. Supp. 1002, 1004-05 (N.D. Ill. 1992).

In deciding that an unambiguous anti-assignability provision in an ERISA-governed plan voids any purposed assignment, the Ninth Circuit began by noting that any construction of ERISA must be consistent with Congressional intent. *Davidowitz*, 946 F.2d at 1480. "Even if it could be said that required assignability promotes certain ERISA policies, this Court would not create a construction requiring assignability in the face of Congressional silence on the issue." *Id. See also St. Francis Reg'l Med. Ctr.*, 49 F.3d at 1465.

The *Davidowitz* court further noted that the Supreme Court has stated that Congress carefully considered assignment of both pension and welfare benefit plans and consciously decided to prohibit assignment of pension plans but remained silent on the assignment of welfare benefit plans. *See Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837, 108 S. Ct. 2182, 2189, 100 L. Ed. 2d 836 (1988) ("[Congress] had before it a provision to bar the alienation or garnishment of ERISA plan benefits, and chose to impose that limitation only with respect to ERISA pension benefit plans, and *not* ERISA welfare benefit plans. In a comprehensive regulatory scheme like ERISA, such omissions are significant ones."). In sum, the *Davidowitz* court found that it could not agree that Congressional silence on the issue shows a Congressional intent to mandate assignability. "On the contrary, if Congress had intended this result, it could have said so." *Davidowitz*, 946 F.2d at 1480. The court concluded that Congress "intended instead to allow the free marketplace to work out such competitive, cost effective, medical expense reducing structures as might evolve." *Id.* at 1481.

We agree with *Davidowitz* and *St. Francis Reg'l. Med. Ctr.* that Congressional silence on the issue does not mandate a Congressional intent to mandate assignability. Because ERISA-governed plans are contracts, the parties are free to bargain for certain provisions in the plan – like assignability. Thus, an

unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable.

Having determined that an unambiguous anti-assignability provision in an ERISA-governed welfare benefit plan voids any purposed assignment, we must consider whether the anti-assignability provision in this Plan is unambiguous. We conclude that it is. The provision states in clear terms that "[e]xcept as applicable law may otherwise require, no amount payable at any time . . . shall be subject in any manner to alienation by . . . assignment . . . of any kind[]." By its own terms, the provision clearly and unambiguously prohibits Murray from assigning benefits to PMG. Accordingly, the anti-assignment clause precludes PMS's maintenance of an ERISA action.

## V.  CONCLUSION

We conclude that ERISA's silence on the assignability issue cannot be interpreted to mandate affirmatively an absolute right to assign. Rather, we conclude that ERISA's silence on the assignability issue leaves the matter of assignability of welfare benefits to the agreement of the contracting parties. The Plan provision in this case clearly provides that a participant or beneficiary cannot assign benefits. This is a valid, enforceable provision. Thus, PMG cannot

maintain an ERISA action.  Accordingly, we reverse the district court's grant of summary judgment and remand this case to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.