[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10320
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 22, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:10-cv-01776-RLV

KURT R. WARD,
Attorney At Law, LLC,

Plaintiff - Consol. Counter Claimant -
Consol. Cross Claimant - Consol.
Cross Defendant - Appellant,

versus

THE RETIREMENT BOARD OF BERT BELL/PETE ROZELLE NFL PLAYER
RETIREMENT PLAN,

Consol. Plaintiff -
Consol. Counter Defendant -
Appellee,

THE BANK OF NEW YORK MELLON CORPORATION,

Consol. Plaintiff,

BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN,

Defendant - Appellee,

ODESSA TURNER,

MARVIN WOODSON,

Defendants -
Consol. Defendants -
Consol. Cross Defendants -
Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(June 22, 2011)

Before TJOFLAT, CARNES, and FAY, Circuit Judges.

PER CURIAM:

Kurt R. Ward, Attorney at Law, LLC, appeals the district court's order denying its motion for judgment on the pleadings and granting the Plan Parties' (the Bert Bell/Pete Rozelle NFL Player Retirement Plan, the Retirement Board of the Plan, and the Bank of New York Mellon Corporation) cross-motion for judgment on the pleadings. Both parties' motions sought a declaration about whether the Plan Parties had to pay the disability benefits of two of the Ward Firm's retired NFL player clients into the firm's client trust account pursuant to state court judgments for unpaid attorney's fees despite a provision in the Plan prohibiting any "benefit under the Plan" from being assigned or reached by creditors through legal process.

2

I.

Odessa Turner and Marvin Woodson, both retired NFL players, retained the Ward Firm to represent them during the administrative review of their claims for disability benefits under the Plan, which was a pension and welfare benefits plan governed by ERISA. Turner and Woodson both entered into contingency fee contracts with the Ward Firm, promising to pay a percentage of any proceeds procured from the Plan. With the Ward Firm's assistance, Woodson successfully obtained disability benefits from the Plan in 2008 and Turner did so in 2009. Sometime later both Turner and Woodson stopped paying the Ward Firm the attorney's fees they had promised to pay under the contingency fee contracts.

After Turner and Woodson stopped paying it, the Ward Firm brought suit against the two retired players in October 2009 for breach of contract in Georgia state court, which resulted in default judgments for the Ward Firm after the retired players failed to appear. The default judgments awarded specific performance of the fee contracts to the Ward Firm, accomplishing that by directing the Plan Parties, who were not parties to the state court lawsuits, to pay all disability benefits for Turner and Woodson into the Ward Firm's client trust account for proper distribution under the terms of the contingency fee contracts.

In February 2010 the Ward Firm forwarded the judgments to the Plan Parties, including the Retirement Board. The Retirement Board, acting on behalf of the Plan Parties, reviewed the judgments and refused to pay the disability payments into the Ward Firm's trust account. The Retirement Board objected to the payment of the benefits because it determined that payment was prohibited by the Plan, specifically the Plan's spendthrift provision. Section 11.2 of the Plan provided:

> "Spendthrift" Provision. No benefit under the Plan will be subject in any manner to anticipation, pledge, encumbrance, alienation, levy or assignment, nor to seizure, attachment or other legal process for the debts of any Player or beneficiary, except pursuant to (a) a qualified domestic relations order under [§] 414(p) of the [Tax] Code, (b) a domestic relations order entered before January 1, 1985 that the Retirement Board treats as a qualified domestic relations order, or (c) an exception required under [§] 401(a)(13) of the [Tax] Code.

The Plan also gave the Retirement Board, as the "named fiduciary" of the Plan as defined by ERISA, "full and absolute discretion, authority and power to interpret, control, implement, and manage the Plan," including the power to "[d]efine the terms of the Plan [and] construe the Plan."

After payment was refused, both the Ward Firm and the Plan Parties filed actions in federal district court seeking declaratory relief about whether the Plan Parties had to pay the two retired players' disability benefits into the Ward Firm's

trust account. The district court consolidated the two cases, and each party filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The district court denied the Ward Firm's motion, granted the Plan Parties' motion, and entered judgment for the Plan Parties. This is the Ward Firm's timely appeal from that judgment.

The Ward Firm contends that the district court erred by finding that the spendthrift provision was unambiguous. Alternatively, the Ward Firm contends that even if the provision was unambiguous the district court erred by finding this case was controlled by our holding in Physicians Multispecialty Group v. Healthcare Plan of Horton Homes, Inc., 371 F.3d 1291, 1296 (11th Cir. 2004), which held that anti-assignment provisions in ERISA welfare benefits plans are valid and enforceable. We deal with each contention in turn.

II.

We review de novo a district court's decision on a motion for judgment on the pleadings under Rule 12(c). Hart v. Hodges, 587 F.3d 1288, 1290 n.1 (11th Cir. 2009). Because the Retirement Board had discretion to construe the Plan, we will uphold its interpretation of the Plan unless we find it arbitrary and capricious. See Doyle v. Liberty Life Assur. Co. of Bos., 542 F.3d 1352, 1360 (11th Cir. 2008) (holding that if an ERISA plan administrator has discretion under the plan's

terms to make decisions, plaintiff has the burden to prove that the decision was arbitrary and capricious).

A.

The Ward Firm contends that the district court incorrectly found that the spendthrift provision in the Plan was unambiguous. It notes that the Plan covers two main types of benefits—pension benefits and disability or welfare benefits.[1] Given the two types of benefits, the Ward Firm asserts that because the three exceptions to the spendthrift provision pertain only to ERISA statutory exceptions related to pension benefits, "benefits" as used in that provision means only pension benefits. The Ward Firm argues that the distinction between the two types of benefits at least makes the language of the spendthrift provision ambiguous.

The Ward Firm's strained attempt to create ambiguity where none exists is unavailing. We agree with the district court that the language of the spendthrift provision is clear and unambiguous. The provision is found in an article of the Plan containing miscellaneous terms applicable to the entire Plan, including all types of benefits under the Plan. The provision states without qualification or

---

[1] ERISA defines disability benefits as a type of welfare benefit that may be included in an ERISA welfare benefit plan. See 29 U.S.C. § 1002(1) ("The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan . . . [that] was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . benefits in the event of . . . disability . . . .").

6

limitation that "[n]o benefit under the Plan will be subject in any manner to anticipation, pledge, encumbrance, alienation, levy or assignment, nor to seizure, attachment or other legal process for the debts of any Player or beneficiary." That clearly prohibits the disability benefits in this case from being subject to the specific performance ("other legal process") awarded to the Ward Firm in the state court judgments. The Retirement Board's reading of the Plan's unambiguous terms and its refusal to deposit the disability benefits into the Ward Firm's trust account were not arbitrary and capricious.

## B.

The Ward Firm also contends that even if the spendthrift provision is unambiguous, the common law of trusts excepts debts incurred by trust beneficiaries for the provision of necessary services from a spendthrift provision's protections. And because ERISA is silent about the assignability of disability benefits, the Ward Firm argues that we should incorporate this exception from the common law of trusts into ERISA. Two obstacles stand in the way of the Ward Firm's contention.

First, while ERISA may be silent about the assignability of disability benefits, ERISA it is not silent about the importance of the written plan instrument and its terms. See 29 U.S.C. § 1102(a)(1) ("Every employee benefit plan shall be

established and maintained pursuant to a written instrument."); Hunt v. Hawthorne Assocs., Inc., 119 F.3d 888, 891 (11th Cir. 1997) ("The cornerstone of an ERISA plan is the written instrument . . . ."). The plan instrument establishes "the allocation of responsibilities for the operation and administration of the plan," 29 U.S.C. § 1102(b)(2), and the plan fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]," id. § 1104(a)(1)(D). The document governing the Plan expressly provides that no benefits will be "subject in any manner to . . . assignment, nor to . . . other legal process for the debts" of any retired players. That unambiguous command is not inconsistent with any statutory requirement of ERISA and thus must be followed by the Plan's fiduciaries.

Second, we have concluded that "an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable." Physicians Multispecialty Grp. v. Healthcare Plan of Horton Homes, Inc., 371 F.3d 1291, 1296 (11th Cir. 2004). We explained that "[b]ecause ERISA-governed plans are contracts, the parties are free to bargain for certain provisions in the plan—like assignability." Id.

The spendthrift provision preventing assignment in the Plan is no different. If the retired players wanted to be able to assign their benefits under the Plan to law firms (or allow the benefits to be reached by law firm creditors through legal process) in order to attract contingency fee legal services, they could have collectively bargained for that with the Plan Parties. Instead, they agreed to a bargain that included a spendthrift provision, which limited their ability to assign their benefits but also protected their benefits from creditors trying to reach them through legal process.

Our prior panel precedent holds that bargained-for provisions barring assignment in ERISA welfare benefits plans are valid and enforceable. Physicians Multispecialty Grp., 371 F.3d at 1296. And "under the prior precedent rule, we are bound to follow a prior binding precedent unless and until it is overruled by this court en banc or by the Supreme Court." Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1274 (11th Cir. 2010) (quotation marks and alteration omitted). The Ward Firm has not directed our attention to any such intervening en banc or Supreme Court decision. Accordingly, the district court did not err in declaring that the spendthrift provision in the Plan prevents the Plan Parties from depositing the disability benefits owed to Turner and Woodson into the Ward Firm's trust account.

**AFFIRMED.**