W.A. GRIFFIN, MD, pro se, Plaintiff,

v.

GENERAL MILLS, INC., Defendant.

CIVIL ACTION NO. 1:15–CV–00268–AT

United States District Court,
N.D. Georgia, Atlanta Division.

Signed May 13, 2015

W. A. Griffin, MD, Atlanta, GA, pro se.

Jennifer A. Adler, Weinberg Wheeler Hudgins Gunn & Dial, LLC, Vernon Robert Denham, Jr., Robins Kaplan, LLP, Atlanta, GA, for Defendant.

### ORDER

Amy Totenberg, United States District Judge

This matter is before the Court on Defendant General Mills, Inc.'s ("GM") Motion to Dismiss [Doc. 4]. For the following reasons, the Motion is **GRANTED.**

## I. BACKGROUND FACTS

At the motion to dismiss stage, the facts alleged in the Complaint are accepted as true. Plaintiff Griffin operates a solo dermatology practice called Intown Dermatology. (Compl. ¶ 3.) As a condition of service, Plaintiff requires her patients to assign their health insurance benefits to her. (Id.)

On July 17, 2013, Plaintiff administered medical care on patient JG, whose insurance coverage is at issue in this litigation. (Id. ¶ 17.) JG is a beneficiary of an GM-sponsored self-funded group health benefit plan (the "Plan") governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. ch. 18. (Id. ¶ 2, 14). Plaintiff was not paid what she believes she is owed for services rendered to JG

and seeks $92.00 in unpaid benefits and over $89,000 in statutory penalties. (Id. at 13.)

Plaintiff's Complaint contains two counts against GM, both of which are styled as ERISA violations. Notably, the Complaint does not include a count for unpaid benefits. Rather, Count One alleges failure to produce plan documentation upon request, and Count Two alleges GM breached its "contractual obligations to the Plaintiff as recognized by ERISA."

## II. LEGAL STANDARD

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1216 (3d ed.2002); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. See Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir.1993). Plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

## III. DISCUSSION

Defendant GM moves to dismiss both ERISA-based violations under Rule

12(b)(6). GM argues that Plaintiff lacks standing to bring any ERISA-based claim against it because the Plan at issue contains an unambiguous anti-assignment clause. Plaintiff responds that the assignment that grants her standing to bring her ERISA claims should be permitted because Georgia insurance law allows for such assignments.

## A. The Anti-assignment Clause

The Eleventh Circuit has long since resolved any question about the effectiveness of an anti-assignment clause as it pertains to ERISA claims. *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1294–1296 (11th Cir.2004). In *Physicians Multispecialty Group*, a healthcare provider obtained an assignment of benefits from the estate of a deceased participant in an ERISA-governed plan. *Id.* at 1293. When the plan did not pay as much as the provider believed it was owed for services rendered to the deceased, the provider sued for unpaid benefits under 29 U.S.C. § 1132(a)(1)(B). The assignment issue was not fully briefed or decided by the district court, and summary judgment was granted in favor of the provider. *Id.*

The Court of Appeals reversed. After the issue *was* fully briefed, the Eleventh Circuit held that an ERISA-governed healthcare plan may prohibit the assignment of benefits to a third-party, including to a healthcare provider. Specifically, the court stated:

> Under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), two categories of persons exist who can sue for benefits under an ERISA-governed plan: plan beneficiaries and plan participants.
> Healthcare providers ... are generally not "participants" or "beneficiaries" under ERISA and thus lack independent standing to sue under ERISA. Healthcare providers may acquire derivative standing, however, by obtaining a written assignment from a "beneficiary" or "participant" of his right to payment of benefits under an ERISA-governed plan.
> . . .
> [But because] ERISA-governed plans are contracts, the parties are free to bargain for certain provisions in the plan—like assignability. Thus, an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable.

*Id.* at 1294–1296 (citations omitted).

The anti-assignment clause considered in *Physicians Multispecialty Group* was found to be unambiguous. It read:

> Except as applicable law may otherwise require, no amount payable at any time hereunder shall be subject in any manner to alienation by ... assignment ... of any kind[ ]. Any attempt to ... assign ... any such amount, whether presently or hereafter payable, shall be void....

*Id.* at 1295. As the clause was unambiguous, it precluded the healthcare provider's "maintenance of an ERISA action." *Id.* at 1296. *See also Ward v. Ret. Bd. of Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 643 F.3d 1331, 1333–34 (11th Cir.2011) (holding same and citing Physicians Multispecialty Group).

██ The anti-assignment clause at issue here [1] is similarly unambiguous. It reads, in pertinent part:

> Your rights and benefits under these plans cannot be assigned, sold trans-

---

**1.** The Court considers the plan documentation attached to Defendant's Motion to Dismiss because the document is referred to in the Complaint and is central to Plaintiff's claims. *See Brooks v. Blue Cross and Blue*

ferred or pledged by you ... except under limited circumstances (e.g., qualified medical child support order).

(Doc. 4–2 at 187.)[2] The provision's terms are clear: participants in and beneficiaries of Defendant GM's ERISA-governed health benefit plan cannot assign their rights to receive payment absent certain conditions (that are not alleged to be present here.) Under *Physicians Multispecialty Group*, this unambiguous anti-assignment clause is valid and enforceable.

The "assignment of benefits" that Plaintiff received from JG states as follows:

> I ... hereby assign and convey directly to [W.A. Griffin, M.D./Intown Dermatology], as my designated Authorized Representative(s), all medical benefits and/or insurance reimbursement.

(Doc. 1 at 22.) The assignment conveys only "medical benefits and/or insurance reimbursement." But that is exactly what is prohibited by the anti-assignment clause. Under *Physicians Multispecialty Group*, the anti-assignment clause precludes Plaintiff's "maintenance of an ERISA action" based on this impermissible assignment. *Physicians Multispecialty Group*, 371 F.3d at 1296.

## B. The State Law

Plaintiff responds that Georgia law, and specifically O.C.G.A. § 33–24–54, requires the recognition of assignments of benefits in insurance contracts. Plaintiff cites *Louisiana Health Serv. & Indem. Co. v. Rapides Healthcare Sys.*, 461 F.3d 529 (5th Cir.2006) *cert denied* 549 U.S. 1279, 127 S.Ct. 1831, 167 L.Ed.2d 319 (2007) to support this proposition. *Louisiana Health Service*, though, is a Fifth Circuit case analyzing a Louisiana statute and holding only that ERISA does not preempt the statute. (*Id.* at 541 ("[W]e conclude that Louisiana's assignment statute is not preempted by ERISA.").) While the Louisiana and Georgia statutes are somewhat similar, they are sufficiently different as to mitigate the persuasiveness of the opinion in *Louisiana Health Service*, to the extent that case could be read to require the recognition of assignments in the current case.[3] More importantly, this Court is bound by the law of the Eleventh Circuit, not the Fifth Circuit.

The distinction in the holdings of the Eleventh and Fifth Circuits is important because the Eleventh Circuit has implicitly recognized ERISA preemption on precisely this issue whereas the Fifth Circuit explicitly declined to do so. The difference lies in the respective courts' interpretations of congressional silence, in ERISA, as to the assignability of rights

---

*Shield of Florida, Inc.*, 116 F.3d 1364 (11th Cir.1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." (citing *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993)).

2. This anti-assignment clause comes from the individual Plan document. The Wrap Document contains an anti-assignment clause that is not materially different. (Doc. 4–2 at 35

("Except as otherwise permitted ... benefits payable to a Covered Person under a Participating Plan ... may not be voluntarily sold, transferred, alienated or assigned.").)

3. Neither the Fifth Circuit nor the district court below found that the Louisiana statute at issue in *Louisiana Health Service* required the recognition of assignments. Rather, it was the Louisiana Department of Insurance that concluded "that Blue Cross's policy provisions violated the assignment statute." *Louisiana Health Service*, 461 F.3d at 531. Blue Cross then filed a declaratory judgment action seeking a declaration that the statute was preempted by ERISA. *Id.*

and benefits. As the Fifth Circuit noted, "congressional silence points in both directions: either leaving assignment of employee welfare benefits to the parties or leaving room for state regulation, should a state desire to intervene." *Louisiana Health Service*, 461 F.3d at 540. The Fifth Circuit then chose the latter, recognizing that other Circuits, including the Tenth, had chosen the former.

The Eleventh Circuit relied heavily upon the same Tenth Circuit opinion and also chose the former, finding that congressional silence points to leaving assignability to the contractual freedom of the parties rather than state law or federal common law:

> We agree with *Davidowitz* [*v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476 (9th Cir.1991)] and *St. Francis Reg'l. Med. Ctr.* [*v. Blue Cross & Blue Shield of Kan., Inc.*, 49 F.3d 1460 (10th Cir. 1995)] that Congressional silence on the issue does not mandate a Congressional intent to mandate assignability. Because ERISA-governed plans are contracts, the parties are free to bargain for certain provisions in the plan—like assignability. Thus, an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable.

*Physicians Multispecialty Group*, 371 F.3d at 1296. There is no indication that the Eleventh Circuit's conclusion—that congressional silence signals an intent to leave assignability to the contracting parties to the plan—does not apply when a challenge to non-assignability is based on a state law.

· Two other cases that the Eleventh Circuit in *Physician's Multispecialty Group* considered persuasive also found that ERISA's emphasis on the contractual nature of benefit plans preempted any attempt to force the categorical recognition or non-recognition of anti-assignment clauses. In *Davidowitz*, 946 F.2d at 1480–81, the Ninth Circuit held that Congressional intent "to allow the free marketplace to work out such competitive, cost effective, medical expense reducing structures as might evolve" militated against creating federal common law that required ERISA plans to recognize assignments. And in *Neurological Res., P.C. v. Anthem Ins. Companies*, 61 F.Supp.2d 840, 845–46 (S.D.Ind.1999), the district court granted summary judgment for defendant insurance company on all claims based on ERISA-governed plans containing anti-assignment clauses. That court stated, "'Because ERISA instructs courts to enforce strictly the terms of plans, *see* 29 U.S.C. § 1104(a)(1)(D) and *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148 (7th Cir.1989) (en banc), an assignee cannot collect unless he establishes that the assignment comports with the plan.'· *Kennedy v. Connecticut General Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991)." *Id.*

Even if the assignment were valid, however, the plain language of the assignment only assigns to Plaintiff the right to receive "benefits." In the Eleventh Circuit, "[a]ssignment agreements are generally interpreted narrowly." *Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*, 546 Fed. Appx. 846, 851 (11th Cir.2013) *cert. denied sub nom. Sanctuary Surgical Ctr., Inc. v. Aetna Health, Inc.*, —— U.S. ——, 134 S.Ct. 1557, 188 L.Ed.2d 559 (2014). And under a narrow reading, the assignment of mere "benefits" under the Plan would not provide Plaintiff with the right to bring a claim against the Plan for failure to produce documents—or any other claim for civil penalties under ERISA.[4] Put another

---

4.  Plaintiff's contention, in a related case, that

the assignment covers· more than benefits is

way, "[Plaintiff's] contention stretches beyond its breaking point the plain meaning of the agreement, which assigns only the right to receive benefits and not the right to assert claims for breach of fiduciary duty or civil penalties. Because the agreements do not support [Plaintiff's] position, [she] lack[s] standing to bring claims under § 502(a)(3) and § 502(c)," as codified at 29 U.S.C. §§ 1132(a)(3) and 1132(c). *Id.* at 852. As a result, Defendant's Motion to Dismiss is **GRANTED** as to Counts 1 and 2. These counts—the only ones in the Complaint—are **DISMISSED WITHOUT PREJUDICE** for lack of standing.[5]

### C. Other Options

Practically speaking, does Plaintiff have any possible legal claim for payment for her services? The answer is yes. "If provider-assignees cannot sue the ERISA plan for payment, they will bill the participant or beneficiary directly for the insured medical bills, and the participant or beneficiary will be required to bring suit against the benefit plan when claims go unpaid." *Cagle v. Bruner,* 112 F.3d 1510, 1515 (11th Cir.1997). Plaintiff herself knew of the more traditional "bill your patients" avenue and even required JG to represent that he or she knew of this avenue, too. On Plaintiff's "Legal Assignment of Benefits" document, JG ticked boxes next to the following two statements:

- I understand that I am financially responsible for all charges whether or not paid by insurance.
- I understand and agree that I am responsible for full payment of the medical debt if my insurance company has refused to pay 100% of my benefits based on billed charges, within ninety (90) days of any and all appeals or request [*sic*] for information.

(Doc. 1 at 22.) Nothing in this Order prevents Plaintiff from recovering in state court from her patient JG, the recipient of her surgical interventions.[6]

## IV. CONCLUSION

All of the claims in the Complaint are ERISA claims. As Defendant's Plan contains an unambiguous anti-assignment clause, Plaintiff lacks standing to bring any of them. Defendant's Motion to Dismiss all claims in the Complaint [Doc. 4] is therefore **GRANTED,** and Plaintiff's mo-

---

without merit. The form patients sign is titled, "Legal Assignment of Benefits and Designation of Authorized Representative For The Release of Medical and Health Plan Documents For The Claims Processing & Reimbursement As Required by Federal and State Laws," (Doc. 1 at 22), and the statement next to the relevant tick-box that patients are required to affirmatively tick states, as quoted above, "I ... hereby assign and convey directly to [W.A. Griffin, M.D./Intown Dermatology], as my designated Authorized Representative(s), all medical benefits and/or insurance reimbursement." (*Id.*) Nowhere does the document assign the right to assert claims for breach of fiduciary duty or civil penalties.

5. Plaintiff also has moved for leave to amend her complaint to add one additional ERISA claim for breach of a co-fiduciary under 29

U.S.C. § 1105. (Doc. 9–1 at 13–14.) For the above reasons, this amendment would be futile. Plaintiff's Motion to Amend [Doc. 9] is DENIED.

6. For reasons that are obvious from the Complaint, the Court construed Plaintiff's breach of contract claim as an ERISA claim and found Plaintiff did not have standing to bring that claim. Nothing in the Order should be interpreted to preclude Plaintiff from attempting to bring purely state law claims against any liable entity. *See In re Managed Care Litig.,* 298 F.Supp.2d 1259, 1293 (S.D.Fla. 2003) (discussing at length ERISA preemption differences between the state law claims of Assignee Non–Participating Providers and Non–Participating, Non–Assignee Providers and finding that the latter are not necessarily preempted) (citing *Lordmann v. Equicor,* 32 F.3d 1529 (11th Cir.1994)).

tion for leave to amend the Complaint to add an additional ERISA claim [Doc. 9] is **DENIED.** All claims are **DISMISSED WITHOUT PREJUDICE** for lack of standing. The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED** this 13th day of May, 2015.