[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12135
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-00115-AT

W. A. GRIFFIN, MD,

Plaintiff - Appellant,

versus

SOUTHERN COMPANY SERVICES, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 30, 2015)

Before MARTIN, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Proceeding *pro se*, Dr. W.A. Griffin appeals the dismissal of her complaint under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a). After careful consideration, we affirm.[1]

I.

Dr. Griffin, who operates a dermatology practice in Atlanta, Georgia, treated seven patients insured under a Southern Company Services, Inc. ("Southern Company") sponsored group health benefit plan (the "Plan").[2] Dr. Griffin is an out-of-network provider under the Plan. She required each patient to execute an assignment of benefits that "assign[ed] and convey[ed]" to her "all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services rendered from [Dr. Griffin] . . . , regardless of [her] managed care network

_____

[1] Dr. Griffin's motions for (1) a three-judge panel and a published opinion and (2) expedited consideration, a three-judge panel, and a published opinion are also pending before us. We deny her motions. Her requests for a three-judge panel are moot because our rules provide that she is entitled to a three-judge panel. *See* 11th Cir. R. 34-2, 34-3(e). As regards her requests for a published opinion, our rules provide that "[a]n opinion shall be unpublished unless a majority of the panel decides to publish it." 11th Cir. R. 36-2. In this case, the panel decided not to publish. Our rules do permit a party to file a motion requesting that a previously unpublished order be published but provide that the motion shall be granted only if the panel unanimously agrees to publish. 11th Cir. R. 36-3. Construing Dr. Griffin's motions as requesting publication under Rule 36-3, the request is premature, and we deny it. Finally, we deny her request for expedited consideration as moot.

[2] At the motion to dismiss stage, we accept the well-pleaded allegations in the complaint as true and view them in the light most favorable to Dr. Griffin. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012). We also consider the Southern Company Health & Welfare Benefits Plan document, which Southern Company submitted to the district court with its motion to dismiss. Although Dr. Griffin did not attach this document to her complaint, we may consider it because it is central to the complaint and its contents are not in dispute. *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

participation status." Legal Assignment of Benefits (Doc. 7-2).[3] Each assignment stated that it is "valid for all administrative and judicial review under . . . ERISA." *Id.*

The Plan is an employee welfare benefit plan under ERISA that provides its participants with medical-related benefits. Southern Company is the plan sponsor and its Benefits Administration Committee serves as the plan administrator. Anthem Blue Cross Blue Shield of Georgia ("BCBSGA") provides claims administration services to the Plan.

The Plan sets forth the terms and conditions of the agreement between Southern Company and its employee participants. The Plan contains an anti-assignment clause that prohibits plan participants and beneficiaries from assigning benefits:

> To the extent permitted by law, the rights or interests of any Participant or his beneficiary to any benefits hereunder shall not be subject to attachment or garnishment or other legal process by any creditor of any such Participant or beneficiary, nor shall any such Participant or beneficiary have any right to . . . assign any of the benefits which he may expect to receive, contingently or otherwise, under this Plan, and any attempt to . . . assign any right to benefits hereunder shall be void. Notwithstanding the foregoing, the Plan Administer [sic] may pay Plan benefits directly to the provider of services. Such payment shall fully discharge the Plan Administrator from further liability under the Plan.

Southern Company Health & Welfare Benefits Plan at 26 (Doc. 5-2).

---

[3] Citations to "Doc." refer to docket entries in the district court record in this case.

Dr. Griffin alleges that for three of the patients insured by the Plan, BCBSGA processed but underpaid claims she submitted.  She filed with BGBSGA a level one administrative appeal regarding the claims for each of these patients. With each administrative appeal, she requested at least ten broad categories of documents connected to the Plan and demanded that BCBSGA notify her whether the Plan contained an anti-assignment clause, warning that if it failed to do so, she would argue in litigation that the anti-assignment clause was unenforceable. BCBSGA denied each of the level one appeals.  Dr. Griffin then filed level two administrative appeals for these claims.  BCBSGA either denied or failed to respond to Dr. Griffin's level two appeals.

While the administrative appeals were pending, Dr. Griffin sent copies of them to David Settle, a Southern Company employee responsible for compensation and benefits.  Settle responded by providing Dr. Griffin with copies of the summary plan descriptions and informing her that BCBSGA would respond to her appeals.  Neither BCBSGA nor Southern Company provided Dr. Griffin with the documents that she requested with her level one appeals (other than the summary plan descriptions) or disclosed that the Plan had an anti-assignment provision.

Dr. Griffin submitted to BCBSGA claims for four other patients covered by the Plan, which were never processed or paid.  After receiving no response from BCBSGA, Dr. Griffin sent a letter to James Garvie, Southern Company's Director

4

of Benefits, informing him that BCBSGA had failed process the claims.  A Southern Company employee responded that he had forwarded her concerns to BCBSGA.

Dr. Griffin sued Southern Company in federal court, bringing ERISA claims for unpaid benefits, breach of fiduciary duty, failure to provide Plan documents, and breach of contract, seeking money damages, statutory penalties, and declaratory relief.  Southern Company moved to dismiss the complaint.  While the motion to dismiss was pending, Dr. Griffin sought leave to amend her complaint to add three additional claims based upon co-fiduciary liability under ERISA.  The district court granted the motion to dismiss and denied the motion to amend, concluding that Dr. Griffin lacked statutory standing under ERISA based on the Plan's anti-assignment provision.  Accordingly, the district court dismissed the case without prejudice.  This appeal followed.

## II.

Although courts have long applied the label of "statutory standing" to the basis for decisions such as the district court's here, that Dr. Griffin lacked standing under ERISA, the Supreme Court has cautioned that this label is "misleading" because the court is not deciding whether there is subject matter jurisdiction but rather whether the plaintiff "has a cause of action under the statute."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387-88 & n.4

5

(2014) (internal quotation marks omitted).  Put differently, we understand the district court's decision that Dr. Griffin lacked statutory standing to be a determination that she failed to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1273-74 (11th Cir. 2015).

"We review *de novo* the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (internal quotation marks omitted).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[N]aked assertions devoid of further factual enhancement" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (internal quotation marks omitted).  Upon review of dismissals for failure to state a claim, "[*p*]*ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (internal quotation marks omitted).

III.

Section 502(a) of ERISA provides that only plan participants and plan beneficiaries may bring a private civil action to recover benefits due under the terms of a plan, to enforce rights under a plan, or to recover penalties for a plan administrator's failure to provide documents.  29 U.S.C. § 1132(a)(1), (c).  This provision also limits the right to sue for breach of fiduciary duty to plan participants, plan beneficiaries, plan fiduciaries, and the Secretary of Labor.  *Id.* § 1132(a)(2).  Additionally, only plan participants, plan beneficiaries, and plan fiduciaries may bring a civil action to obtain equitable relief to redress a practice that violates ERISA or the terms of a plan.  *Id.* § 1132(a)(3).  As we have explained, "[h]ealthcare providers . . . are generally not 'participants' or 'beneficiaries' under ERISA and thus lack independent standing to sue under ERISA."  *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.,* 371 F.3d 1291, 1294 (11th Cir. 2004).

There is, however, an exception to this general rule that healthcare providers have no right of action under section 502(a).  We have recognized that "[h]ealthcare providers may acquire derivative standing . . . by obtaining a written assignment from a 'beneficiary' or 'participant' of his right to payment of benefits under an ERISA-governed plan."  *Id*; *see also Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir. 1997) (explaining that "neither the text of § 1132(a)(1)(B) nor any

7

other ERISA provision forbids the assignment of health care benefits provided by an ERISA plan"). Although ERISA does not prohibit a plan participant or beneficiary from assigning benefits to her provider, we have held that an anti-assignment provision in a plan, which limits or prohibits a plan participant or beneficiary from assigning her right to payment of benefits, is valid and enforceable. *Physicians Multispecialty Grp.,* 371 F.3d at 1296. Accordingly, when a plan contains an unambiguous anti-assignment provision, a plan participant or beneficiary may not assign benefits to a healthcare provider, meaning the healthcare provider cannot acquire a cause of action under section 502(a). *Id.*

## A.

In this case, the insureds' assignments purported to transfer to Dr. Griffin their right to payment of benefits from the Plan. We have recognized that when a patient assigns to a provider the right to payment for medical benefits, he also conveys the right to file an action under section 502(a) of ERISA for unpaid benefits. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1352-53 (11th Cir. 2009). Thus, if enforceable, the assignments transferred to Dr. Griffin the right to bring a cause of action under section 502(a) for unpaid benefits.[4]

---

[4] Although the assignments transferred to Dr. Griffin the right to sue under section 502(a) of ERISA for unpaid benefits, the assignments contained no provision transferring the right to assert claims for breach of fiduciary duty or civil penalties. Because the insureds never assigned

8

The question we face is whether the assignments are enforceable under the Plan. The Plan contains an anti-assignability provision that states:

> *To the extent permitted by law*, the rights or interests of any Participant or his beneficiary to any benefits hereunder shall not be subject to attachment or garnishment or other legal process by any creditor of any such Participant or beneficiary, *nor shall any such Participant or beneficiary have any right to . . . assign any of the benefits which he may expect to receive*, *contingently or otherwise, under this Plan, and any attempt to . . . assign any right to benefits hereunder shall be void.* Notwithstanding the foregoing, the Plan Administer [sic] may pay Plan benefits directly to the provider of services. Such payment shall fully discharge the Plan Administrator from further liability under the Plan.

Southern Company Health & Welfare Benefits Plan at 26 (Doc. 5-2) (emphasis added). Therefore, the plan unambiguously prohibits assignments of benefits to the extent permitted by law.

Dr. Griffin focuses on the "to the extent permitted by law" language to argue that the assignments she received are valid under the Plan because anti-assignment clauses are unenforceable under Georgia law. Dr. Griffin relies on O.C.G.A. § 33-24-54(a), which provides that "whenever . . . [a] self-insured health benefit plan . . . provides that any of its benefits are payable to a participating or preferred [licensed] provider of health care services," the plan must also "pay such benefits either directly to any similarly licensed nonparticipating or nonpreferred

---

to Dr. Griffin the right to bring such claims, she lacks derivative standing to bring these claims under section 502 of ERISA.

provider who has rendered such services, has a written assignment of benefits, and has caused written notice of such assignment to be given . . . or jointly to such nonparticipating or nonpreferred provider and to the insured." O.C.G.A. § 33-24-54(a). The statute guarantees that if benefits are payable to preferred or participating providers under a self-insured plan, the plan must also pay benefits to non-participating or non-preferred providers to whom patients have assigned their rights. Nothing in the statute explicitly prohibits a health benefits plan from barring assignment. Thus, we fail to see how section 33-24-54(a) renders an anti-assignment provision unenforceable and decline to hold that the statute implicitly bars anti-assignment provisions.[5]

---

[5] Other states have expressly prohibited anti-assignment clauses. *See, e.g.*, Ala. Code § 27-1-19(b) ("[T]he contract providing coverage to an insured may not exclude the right of assignment of benefits . . . ."); Colo. Rev. Stat. § 10-16-317.5(a) (stating that a "contract issued pursuant to the provisions of this article shall not prohibit a subscriber under the contract from assigning, in writing, benefits under the contract to a licensed hospital or other licensed health care provider for services provided to the subscriber which are covered under the contract"); Me. Rev. Stat. Ann. tit. 24, § 2332-H ("All contracts providing benefits for medical or dental care on an expense-incurred basis must contain a provision permitting the insured to assign benefits for such care to the provider of the care."); N.H. Rev. Stat. Ann. § 420-B:8-n (requiring insurance contracts to "contain a provision permitting the enrollee to assign any benefits provided for medical or dental care on an expense-incurred basis to the provider of care"); Tenn. Code Ann. § 56-7-120 ("[W]henever any policy of insurance issued in this state provides for coverage of health care rendered by a provider . . . , the insured or other persons entitled to benefits under the policy shall be entitled to assign these benefits to the healthcare provider and such rights must be stated clearly in the policy."); Va. Code Ann. § 38.2-3407.13 (prohibiting certain insurers from "refus[in]g to accept or make reimbursement pursuant to an assignment of benefits made to a dentist or oral surgeon by an insured, subscriber or plan enrollee"). Georgia law contains no such provision.

B.

Dr. Griffin argues that even if the Plan's anti-assignment provision is enforceable, Southern Company cannot rely on the provision because it failed to inform her of the provision after she asked whether the Plan contained such a term. Liberally construed, Dr. Griffin's argument is that because Southern Company and BCBSGA failed to disclose the anti-assignment term after she asked them about it in her administrative appeals for three patients, Southern Company either is equitably estopped from relying on the anti-assignment term or has waived it not only for those three patients but also for other patients. We disagree.

Under ERISA, equitable estoppel applies only when "the plaintiff can show that (1) the relevant provisions of the plan at issue are ambiguous, and (2) the plan provider or administrator has made representations to the plaintiff that constitute an informal interpretation of the ambiguity." *Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1069 (11th Cir. 2004). Because the anti-assignment provision is unambiguous, equitable estoppel cannot apply here.

We have "left open the question of whether waiver principles might apply under the federal common law in the ERISA context." *Witt v. Metro. Life Ins. Co.*, 772 F.3d 1269, 1279 (11th Cir. 2014). But even if we assume that waiver could apply in the ERISA context, Dr. Griffin has failed to plead sufficient facts to show

11

that Southern Company waived the anti-assignment provision. "[W]aiver is the voluntary, intentional relinquishment of a known right." *Id.* (internal quotation marks omitted). We have explained that waiver may be express or implied, but to find implied waiver, "the acts, conduct, or circumstances relied upon to show waiver must make out a clear case." *Dooley v. Weil (In re Garfinkle)*, 672 F.2d 1340, 1347 (11th Cir. 1982).

As an initial matter, Dr. Griffin makes no allegation that Southern Company expressly waived the anti-assignment provision. With respect to implied waiver, Dr. Griffin alleges that she demanded that BCBSGA notify her whether the Plan had an anti-assignment provision and sent Southern Company copies of her administrative appeals filed with BCBSGA. We understand Dr. Griffin's argument to be that Southern Company waived the anti-assignment provision because both Southern Company and BCBSGA failed to inform her about the anti-assignment provision after receiving copies of her administrative appeals. Even liberally construing her pleadings and accepting her allegations as true, we find these allegations insufficient to establish a "clear case" that Southern Company intentionally and voluntarily relinquished its rights under the anti-assignment provision. *Id.*[6]

---

[6] We express no opinion about whether Dr. Griffin's allegations would be sufficient to plead that BCBSGA waived the anti-assignment provision, as that question is not before us.

12

## IV.

We conclude that the Dr. Griffin failed to state a claim because she failed to allege facts sufficient to support a cause of action under § 502(a) of ERISA. Accordingly, the district court committed no error in dismissing her complaint against Southern Company.[7]

**AFFIRMED.**

---

[7] Dr. Griffin also argues that the district court erred in denying her motion to amend her complaint to add an additional claim under ERISA. We review the district court's denial of a motion to amend a complaint for abuse of discretion, but we review *de novo* whether the proposed amendment to the complaint would be futile. *See Harris v. Ivax Corp.*, 182 F.3d 799, 802-03 (11th Cir. 1999). Because of the anti-assignment provision, Dr. Griffin has no right of action under ERISA; thus, the proposed amendment would be futile, and the district court properly denied the motion to amend.