[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14046
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-01807-RWS

CAROLINAS ELECTRICAL WORKERS RETIREMENT PLAN,
GRAHAM BLACKBURN,
Trustee,
MIKE CRIBBS,
Trustee,
HOWARD HILL,
Trustee,
ANDY MCCLURE,
Trustee,
LARRY MOTER,
Trustee,
PAUL J. RHODES,
Trustee,
TONY SWIFT,
Trustee,
ALVIN WARWICK,
Trustee,

Plaintiffs-Appellants,

versus

ZENITH AMERICAN SOLUTIONS, INC.,
successor in interest to American Benefit Plan Administrators, Inc.
successor in interest to Administrative Service, Inc.,

Defendant-Third Party Plaintiff-Appellee,

CLACK & ASSOCIATES, PC,
AGH, LLC,

Defendants-Third Party Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 1, 2016)

Before MARCUS, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Carolinas Electrical Workers Retirement Plan ("the plan") -- an employee pension benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002, et seq. -- and the current trustees of the plan (collectively, "the appellants") appeal from the district court's order dismissing their complaint against Zenith American Solutions, Inc. ("Zenith"), which, as the plan's former third-party administrator, performed accounting services for the plan.[1]  In their complaint, the appellants claimed that Zenith breached its fiduciary duties to the plan, as set forth in 29 U.S.C. § 1104(a)(1), and engaged in self-dealing, as defined in § 1106(a)(1), when it convinced the trustees to convert the plan's accounts from the cash-based accounting method to the accrual-based

_____

[1] The claims against Clack & Associates and its successor-in-interest, AGH (collectively, "Clack"), which also performed accounting services for the plan, were voluntarily dismissed.

2

method;[2] mishandled the conversion so that it allocated more funds (approximately $1.4 million) to participant accounts than the plan had in total assets; and failed to inform the trustees of the error for approximately seven years.  The district court granted Zenith's motion to dismiss, concluding that the complaint failed to state a claim for breach of fiduciary duties or self-dealing under ERISA because Zenith was not a fiduciary of the plan, and, in any event, the claims were time-barred pursuant to the six-year statute of limitations in 29 U.S.C. § 1113(1).

On appeal, the appellants argue that: (1) the district court erred in finding their allegations were insufficient to establish Zenith was a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A); (2) even if Zenith was not a fiduciary, the district court erred in dismissing their self-dealing claim, which was alternatively based on Zenith's status as a party in interest; and (3) the district court's statute-of-limitations ruling was erroneous.  After thorough review, we affirm.

We review the district court's grant of a motion to dismiss for failure to state a claim de novo, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.  Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010).  We also review the district court's

---

[2] The "accrual accounting method" is "[a]n accounting method that records entries of debits and credits when the revenue or liability arises, rather than when the income is received or an expense is paid."  Black's Law Dictionary (10th ed. 2014).

application of ERISA's statute of limitations, which is a question of law, de novo. Witt v. Metro. Life Ins. Co., 772 F.3d 1269, 1274 (11th Cir. 2014).

To survive a motion to dismiss, a plaintiff must plead facts sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "While [the] complaint . . . does not need detailed factual allegations, [the] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (quotations, citation, and alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"In every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." Pegram v. Herdrich, 530 U.S. 211, 226 (2000). An entity performs a fiduciary function under ERISA when it: (1) "exercises any discretionary authority or discretionary control respecting management of [an ERISA] plan"; (2) "has any discretionary authority or discretionary responsibility in the administration of [the] plan"; or (3) "exercises

4

any authority or control respecting management or disposition of [plan] assets." 29 U.S.C. § 1002(21)(A).

Proof of an entity's fiduciary status "may come from the plan document, but can also come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document." Hamilton v. Allen-Bradley Co., 244 F.3d 819, 824 (11th Cir. 2001). The fiduciary function is not an "all-or-nothing concept," and a defendant is only a fiduciary to the extent that he exercises discretionary authority "with respect to the particular activity at issue." Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1277 (11th Cir. 2005) (quotations omitted). A third-party administrator that performs purely ministerial functions, such as calculating benefits, maintaining participant records, and communicating with participants, is not a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A). 29 C.F.R. § 2509.75-8 (D-2); Cotton, 402 F.3d at 1279 (holding insurer's allocation of premium payments, analysis of policy performance, and communications with participants constituted "ministerial policy-related services" that did not "render [the insurer] a fiduciary"); Baker v. Big Star Div. of the Grand Union Co., 893 F.2d 288, 290 (11th Cir. 1989) ("a plan administrator who merely performs claims processing, investigatory, and record keeping duties is not a fiduciary" (quotation omitted)).

The district court concluded that Zenith's alleged activities as third-party administrator were ministerial, rather than discretionary, in nature, and they thus did not give rise to fiduciary responsibility under ERISA. The court noted that, while Zenith allegedly recommended that the plan convert to the accrual method, the complaint alleged that the plan made the change only after the trustees voted on the recommendation. In other words, the complaint made clear that Zenith lacked discretionary authority to make the change on its own. The court found that the remainder of Zenith's alleged activities -- which involved re-calculating participant benefits based on the trustees' decision to change accounting methods, reconciling accounts, and sending notices to participants -- amounted to purely ministerial functions that did not give rise to fiduciary status.

The appellants dispute this determination, first arguing that Zenith exercised discretion giving rise to fiduciary responsibility when it: (1) independently made the decisions necessary to implement the change to the accrual method; (2) decided on two occasions to delay the preparation and distribution of annual participant account statements; (3) delegated some of its accounting duties to Clack, which the trustees had separately contracted to perform other accounting services; and (4) failed to inform the trustees about its mishandling of the conversion to the accrual method. However, to the extent Zenith may have exercised some discretion in carrying out these actions, that discretion did not give rise to fiduciary

6

responsibility.    Rather, these actions related to the performance of purely ministerial functions, like the "[c]alculation of benefits" and the "[p]reparation of employee communications material."  29 C.F.R. § 2509.75-8 (D-2).  Indeed, none of the appellants' allegations established that Zenith had authority to make decisions that affected the plan, outside the purely ministerial functions the trustees instructed it to perform.    See Useden v. Acker, 947 F.2d 1563, 1575 (11th Cir. 1991) (noting an entity "will not be considered a fiduciary if [its] discretion is sufficiently limited by a pre-existing framework of policies, practices and procedures"); see also Reich v. Lancaster, 55 F.3d 1034, 1048-49 (5th Cir. 1995) ("To be [a] fiduciar[y], [an entity] must exercise discretionary authority and control that amounts to actual decision making power."); Martin v. Feilen, 965 F.2d 660, 669 (8th Cir. 1992) (holding accountants were fiduciaries, where they not only provided professional accounting services, but also recommended transactions, structured deals, and provided investment advice to such an extent that they exercised effective control over the plan's assets).

As for the appellants' allegation that Zenith failed to inform the trustees of its accounting errors -- thereby usurping the trustees' discretionary authority to manage the plan's accounts -- the complaint, notably, did not allege that Zenith, itself, took any discretionary action concerning the errors.  The complaint alleged only that, once the errors came to light, the trustees made all decisions concerning

7

corrective action, including hiring a forensic accountant to analyze the problem, instructing Zenith to reconcile participant accounts, and then instructing Zenith to ask participants with negative account balances to repay the overages. Accordingly, the district court did not err in concluding that Zenith did not exercise or have discretion with regard to the management or administration of the plan that gave rise to fiduciary duties under ERISA.

The appellants next say that, even if Zenith did not exercise or have discretion over the management or administration of the plan, it was a fiduciary since it "exercise[d] . . . authority or control respecting management or disposition of [the plan's] assets." 29 U.S.C. § 1002(21)(A)(i).[3] The appellants point to allegations that Zenith "account[ed] for the Plan's funds, including the inflow of funds, . . . maintain[ed] the Plan's funds, . . . calculate[d] participant accounts[,] and determine[d] benefit eligibility." But these allegations all relate to Zenith's role in <u>accounting</u> for the plan's assets; they do not show that Zenith exercised <u>authority or control</u> over the assets. For example, they do not allege that Zenith

---

[3] The appellants assert that this Court has not decided whether discretion is a prerequisite to fiduciary status for an entity that exercises authority or control over the "management or disposition of [plan] assets." They assert, citing <u>Guyan Int'l, Inc. v Prof'l Benefits Adm'rs, Inc.</u>, 689 F.3d 793, 798 (6th Cir. 2012); <u>Chao v. Day</u>, 436 F.3d 234, 236 (D.C. Cir. 2006); <u>David P. Coldesina, D.D.S., P.C., Emp. Profit Sharing Plan & Trust v. Estate of Simper</u>, 407 F.3d 1126, 1132 (10th Cir. 2005); <u>Srein v. Frankford Trust Co.</u>, 323 F.3d 214, 221 (3d Cir. 2003); <u>LoPresti v. Terwilliger</u>, 126 F.3d 34, 40 (2d Cir. 1997); <u>IT Corp. v. Gen. Am. Life Ins. Co.</u>, 107 F.3d 1415, 1421 (9th Cir. 1997); and <u>FirsTier Bank, N.A. v. Zeller</u>, 16 F.3d 907, 911 (8th Cir. 1994), that all other circuits to have addressed the issue have held it is not. We need not decide the question here, because, even assuming discretion is not a prerequisite, we conclude that the complaint failed to establish that Zenith exercised authority or control over the plan's assets.

8

took plan assets into its possession or wrongfully paid plan assets over to participants, itself, or others.  Cf. Coldesina, 407 F.3d at 1133 (concluding accountant was a fiduciary, not based on his preparation of plan financial documents, but because he received contributions from the plan, deposited the funds into his business account, and wrote checks on behalf of the plan); Guyan, 689 F.3d at 798 (concluding third-party administrator was a fiduciary based on its authority to write checks on the plan account, its control over where plan funds were deposited and how and when they were disbursed, and its use of the funds for its own purposes); Srein, 323 F.3d at 221-22 (concluding trustee was a fiduciary since it accepted insurance policy proceeds belonging to the plan and erroneously distributed the proceeds to a non-plan customer).  While the complaint alleged that the plan's funds were incorrectly paid out to plan participants based on Zenith's errors, it did not allege that the funds were ever under Zenith's authority or control or that Zenith, itself, wrongfully paid out the funds.

The appellants also assert that Zenith had check-writing authority for the plan, and it thus had actual authority or control over the plan's assets.  However, while courts have based ERISA fiduciary status on an entity's check-writing authority, see Coldesina, 407 F.3d at 1134 ("acting as a signatory on behalf of a plan can indicate fiduciary control"); IT Corp., 107 F.3d at 1421 ("The right to write checks on plan funds is 'authority or control respecting management or

9

disposition of its assets.'"), here the complaint alleged only that Zenith "bill[ed] the Trustees for the time [it] spent correcting [its] mistakes" and "went so far as to write a check on the Plan's account made payable to itself and submit that check to the Chairman of the Board of Trustees for his signature." These allegations fail to show that Zenith had check-writing authority for the plan. Rather, they indicate that Zenith was not a signatory on the plan's bank account and it could not dispose of plan assets without the trustees' approval. Accordingly, the district court did not err in concluding that Zenith was not an ERISA fiduciary and in dismissing the breach-of-fiduciary-duties count for failure to state a claim under ERISA.[4]

Finally, the appellants argue that, even if Zenith was not a fiduciary, the district court erred in dismissing their self-dealing claim, which was based, not just on Zenith's alleged status as a fiduciary, but also on its undisputed status as a party in interest.[5] The appellants recognize that ERISA's self-dealing provision, 29 U.S.C. § 1106(a)(1), reads as a direct prohibition on the fiduciary.[6] However,

---

[4] Because we conclude that the district court properly dismissed the breach-of-fiduciary-duties count for failure to state a claim under ERISA, we do not address the court's alternative statute-of-limitations ruling on that count.

[5] ERISA defines a "party in interest" to include "a person providing services to [an ERISA] plan." 29 U.S.C. § 1002(14)(B).

[6] Section 1106(a) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect[:] . . . furnishing of goods, services, or facilities between the plan and a party in interest; or . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan . . . ." 29 U.S.C. § 1106(a)(1)(C), (D).

they maintain that, pursuant to Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 248-49 (2000), a fiduciary -- such as the trustees in this case -- may maintain an action against a party in interest -- such as Zenith -- even if the suit is based on the fiduciary's own mistake or wrongdoing.  Even assuming that the complaint stated a claim for self-dealing against Zenith under § 1106(a)(1), we agree with the district court that the claim was time-barred under the six-year statute of limitations in 29 U.S.C. § 1113(1).

As alleged in the complaint, the self-dealing claim was based on Zenith's "recommendation that the Trustees convert the Plan to accrual accounting," which the appellants alleged Zenith had done "out of self-interest, rather than in the best interests of the Plan."  As the district court noted, the complaint alleged that Zenith recommended conversion to the accrual method in May 2004 and that Zenith made the errors in the conversion process shortly thereafter, sometime before the trustees' August 26, 2004 board meeting.  The appellants filed the complaint on June 10, 2014 -- nearly ten years after the events on which the self-dealing claim was based.  The claim was thus untimely by approximately four years.

The appellants maintain that the self-dealing claim was timely pursuant to Tibble v. Edison Int'l, 135 S. Ct. 1823, 1828 (2015), in which the Supreme Court held that § 1104(a)(1) imposes upon ERISA fiduciaries a continuing duty to monitor investments they have selected for an ERISA plan and to remove

11

investments that no longer serve the plan's interests.    The Supreme Court explained that, when the plaintiff alleges a breach of the duty to monitor, ERISA's six-year limitations period begins to run, not from the time the fiduciary selected the investments at issue, but from the time the applicable facts and circumstances gave rise to a duty to monitor and alter the investments.  See id. at 1829.

On appeal, the appellants argue that Zenith was unqualified to perform the accounting services the trustees contracted it to perform, and, as a party in interest, it had a continuing duty to disclose to the trustees its incompetency and the errors it made in converting the plan's accounts to the accrual method.  However, the appellants did not plead that the self-dealing claim was based on an on-going duty to disclose.  And, even if they had, Tibble does not support a conclusion that Zenith, as a party in interest, had any such duty.  Tibble addressed the duty of an ERISA fiduciary to monitor investments it selects for an ERISA plan.  The Court's holding was rooted in the common law of trusts, which is the basis for ERISA's fiduciary duties, and which imposes a duty on trustees to "monitor investments and remove imprudent ones."  Id. at 1828-29.  The Tibble Court did not -- as the appellants acknowledge -- address the scope of an ERISA party in interest's duties with regard to the prohibited transactions enumerated in § 1106(a)(1).    The appellants have pointed to no source of law that supports a conclusion that, under § 1106(a)(1), an ERISA party in interest has an ongoing duty of disclosure -- either

12

in general, or specifically related to the party's incompetence or errors -- and we are aware of none. Accordingly, the self-dealing claim could not be based on any failure to disclose. Rather, the claim was based on Zenith's recommendation to convert to the accrual method and its conversion errors, which occurred more than six years before the appellants filed their complaint. The district court thus did not err in deeming the self-dealing claim time-barred.[7]

**AFFIRMED.**

---

[7] The appellants also argue that the district court abused its discretion by denying their post-dismissal request for leave to amend the complaint to address "the court's perceived deficiencies." See Tampa Bay Water v. HDR Eng'g, Inc., 731 F.3d 1171, 1178 (11th Cir. 2013) ("[W]e . . . review the district court's denial of leave to amend for abuse of discretion."); see also Czeremcha v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, 724 F.2d 1552, 1556 (11th Cir. 1984) (holding a plaintiff may move for leave to amend, even after the action is dismissed and final judgment is entered). However, the appellants have not -- in either the district court or on appeal -- proffered any allegations they would have added to the complaint to address the "perceived deficiencies." Accordingly, we fail to see how amendment would have helped the appellants and we discern no abuse of discretion by the district court in denying their request for leave to amend.